## Kitzmiller v. Harleysville Mutual Insurance Company

*Ambrose Campana,* for plaintiff.
*Kenneth Brown,* for defendant.

RAUP, *J.*, December 29, 1979—This matter is before the court on defendant's motions for summary judgment and judgment on the pleadings. The relevant facts can be summarized as follows. After an altercation with another individual in 1973, plaintiff, an insured of defendant Harleysville Mutual Insurance Company (hereinafter Harleysville or defendant) was convicted of assault and battery and ordered to make restitution to the victim. The victim, in 1975, then sued plaintiff for damages in a civil action for assault and battery. Although plaintiff notified Harleysville of the claim, Harleysville refused to defend him asserting the insurance contract afforded no coverage under

the circumstances. After plaintiff settled the civil action, he sued defendant for $4,116.65, which is the $2,100 civil settlement, the $1,225.20 restitution ordered as a result of the assault conviction, the $41.45 record costs of the civil action, and $750 for plaintiff's counsel fees. A board of arbitration allowed an award of this amount in favor of plaintiff. Harleysville appealed the award of the arbitrators to this court and filed motions for summary judgment and for judgment on the pleadings.

The parties agree that the disposition of this matter turns on the resolution of two distinct issues. First, whether plaintiff's assault and battery was an "occurrence" as defined in the insurance contract; and second, whether public policy prohibits a recovery under the policy. In addition to these two issues, plaintiff, through his counsel, posits a third question, namely, whether defendant insurer has the burden of proving that plaintiff was aware of the meaning of the word "occurrence" as it was used in the policy, and whether the insurer explained this meaning to the plaintiff. The law in Pennsylvania is that an insurance contract must be construed against the draftsman of the policy. See, e.g., Evans v. Baltimore Life Ins. Co., 216 Pa. Superior Ct. 425, 268 A. 2d 155 (1970). Moreover, when more than one reasonable construction exists, that construction offering the most expansive coverage must be applied. See Celley v. Mutual Benefit Health & Accident Asso., 229 Pa. Superior Ct. 475, 324 A. 2d 430 (1974). Of course, those rules of construction operate only when there is an ambiguity in the contract.

The insurance policy in this case provides that:

"The Company will pay on behalf of the insured all sums which the insured shall become legally

obligated to pay as damages because of bodily injury or property occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Elsewhere, the policy defines an "occurrence" as being an "accident, including, continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

A criminal assault is not an accident, and clearly, its results are expected or intended from the standpoint of the person committing the assault. In this case, a jury had earlier convicted plaintiff of criminal assault. Although the research of counsel and the court did not reveal any authority by an appellate court of this Commonwealth,[1] the appellate courts of other states have construed language that was either identical or substantially equiva-

---

1. Cf. Winklespecht v. Insurance Company of North America, 8 D. & C. 3d 57 (1978), aff'd per curiam, 261 Pa. Superior Ct. 463, 395 A. 2d 1001 (1978); Pennsylvania National Mutual Casualty Insurance Co. v. Love, 3 D. & C. 3d 534 (1977) (no intention to cause damages, and hence, insurance policies covered the injuries and damages caused by the insured's actions). Compare Wilson v. Maryland Casualty Co., 377 Pa. 588, 105 A. 2d 304 (1954).

lent to the language of the insurance contract in this case.

"The cases overwhelmingly indicate that an injury is 'expected or intended,' from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or if the character of the act is such that an intention to inflict injury can be inferred as a matter of law." Jones v. Norval, 203 Neb. 549, 554, 279 N.W. 2d 388, 391 (1979). Accord, Continental Western Insurance Co. v. Toal, 309 Minn. 169, 244 N.W. 2d 121 (1976). In Jones v. Norval, supra, as in the instant case, plaintiff committed an assault by striking another person in the face. "[T]he act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law." Clark v. Allstate Ins. Co., 22 Ariz. App. 601, 529 P. 2d 1195, 1196 (1975) (affirming summary judgment). Accord, Steinmetz v. National American Ins. Co., 121 Ariz. App. 268, 589 P. 2d 911 (1978); Hins v. Heer, 259 N.W. 2d 38 (N. D. 1977). See also State v. Glens Falls Ins. Co., 137 Vt. 313, 404 A. 2d 101 (1979); Darragh v. Brock, 366 So. 2d 801 (Fla. App. 1979) (motion for summary judgment); Lockhart v. Allstate Ins. Co., 119 Ariz. App. 150, 579 P. 2d 1120 (1978).

This court is convinced that the conduct engaged in by plaintiff, namely, striking another person in the face and breaking that other person's jaw is the type of conduct meant to be excluded from coverage under the insurance policy by the policy's definition of the term "occurrence." From the nature of plaintiff's act, it is clear that harm to another was intended.

"Where coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts without any intent or any expectation of causing any injury, however slight. And conversely, such exclusion is applicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended." Butler v. Behaeghe, 37 Colo. App. 282, 548 P. 2d 934, 938 (1976). See also Iowa Kemper Ins. Co. v. Stone, 269 N.W. 2d 885, 887, fn. 4 (Minn. 1978) ("A defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly.")

Plaintiff relies on the case of Hionis v. Northern Mutual Ins. Co., 230 Pa. Superior Ct. 511, 327 A. 2d 363 (1974), for the proposition that the insurer has the burden of proving the plaintiff's awareness that the policy did not cover intentionally inflicted harm, and that the effect of this exclusion was explained to him. Although an expansive reading of Hionis does seem, at first blush, to place this burden on the insurer, there is reason to doubt that Hionis is to be so broadly applied. The court has the benefit of subsequent pronouncements of our Supreme and Superior Courts, as well as the Federal courts sitting in this state, to aid it in understanding the teaching of Hionis.

Here, unlike the Hionis case, an exclusion from coverage is not involved. That is, the insurer did not grant something in one part of the policy, and then, through a technically worded exclusion, take it away in another part of the policy, as was the case in Hionis. The court in Treasure Craft Jewelers, Inc. v. Jefferson Ins. Co. of N.Y., 431 F. Supp.

1160, 1164 (E.D. Pa. 1977), aff'd, 583 F. 2d 650 (3d Cir. 1978), noted this and in holding Hionis inapplicable stated:

"[T]here is a sharp distinction between a defense based upon an exception or exclusion on the one hand, and a risk not included on the other . . . The defense here is not based upon an exception or an exclusion; it is based upon the simple contention that the language of the policy clearly and unambiguously shows that the risk . . . was not covered by the contract."

Even assuming that it is not analytically valid to distinguish between insurance policies that simultaneously provide and exclude coverage and insurance policies that definitionally limit the risks covered, Hionis does not apply to the facts of this case. This is because Hionis must be construed in the light of two subsequent cases.

Our Supreme Court, in Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A. 2d 1346 (1978), cert. denied, 99 S. Ct. 871, 59 L.Ed. 2d 55 (1979), ruled that "the reasonable expectations of the insured" as a consumer provide the benchmark for resolving questions of insurance coverage. As our Supreme Court so succinctly stated: "[T]he reasonable expectations of the insured clearly became the important consideration once the courts had decided that normal contract principles were no longer applicable in insurance transactions." Id., at 590, 388 A. 2d at 1351. "Courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer." Id., at 595, 388 A. 2d at 1354.

It is clear that by speaking in terms of "reasonable expectations," the Supreme Court articulated

an objective test for determining the scope of insurance coverage. In this case it cannot be said that plaintiff/insured could reasonably expect that his insurance policy would pay for any damage he might inflict in the course of a criminal assault on a third person. This conclusion is bolstered by the fact that the insurance involved in this case was a homeowner's policy. Here, as in Clayton v. Nationwide Ins. Co., 75 D. & C. 2d 74, 77 (1975), the exclusion could hardly be said to have "totally defeated the purpose for which the insured purchased the policy" because "the exclusion in no way affects the basic purpose and coverage of the insurance policy issued by the defendant." Any expectation that the policy provided protection against the pecuniary consequences of assaults was and is unreasonable as a matter of law.[2]

In Miller v. Prudential Ins. Co., 239 Pa. Superior Ct. 467, 362 A. 2d 1017 (1976), the Superior Court set forth factors to consider in determining whether it would be "equitable" to require an insurer to affirmatively demonstrate that the insured was

2. "Á prime concern to the Pennsylvania Supreme Court . . . has been that the reasonable expectation of an insured not be frustrated by the use of technical and ambiguous language in an insurance contract that would be susceptible to different interpretations." Pollard v. Metropolitan Life Ins. Co., 598 F. 2d 1284, 1290 (3d Cir. 1979) (Adams, *J.*, dissenting).

As discussed above, the "reasonable expectations" test is an objective test. Assuming arguendo, however, that the test is subjective, the plaintiff/insured's delay of three years in calling upon Harleysville suggests that the insured had no subjective expectation that his insurance covered the consequences of the assault and battery. Indeed, it appears from plaintiff's complaint that he did not contact his insurer until after he conferred with his counsel regarding the civil suit.

aware of or understood an exclusion from coverage in an insurance policy. These factors are the insured's intent in securing the insurance, the representations made by the insurer's agent to the insured, and the clarity of the exclusion. A consideration and balancing of the above factors is the test for determining whether to impute knowledge or notice of the exclusion to the insured, or stated otherwise, whether it is "equitable" to require the insurer to affirmatively demonstrate that it explained the effect of, and the insured was aware of the exclusion.

As discussed above, it is clear that plaintiff could not have reasonably expected that homeowner's insurance would financially insulate him from any intentional torts or crimes that he might commit. The policy itself was not ambiguous and any question regarding the scope of coverage afforded by the policy could readily have been resolved by reference to the short and clear definition section of the policy. Moreover, there are no allegations that the insurer's agent misrepresented the scope or extent of coverage, and no allegation that the plaintiff/insured procured this insurance for any special occurrence of which the insurer knew. Plaintiff's counsel posited an example of an unambiguous criminal conduct exclusion in his brief. Although that provision could have been included in the policy, the fact that it was not hardly requires the conclusion that defendant believed his insurance premium purchased a license to assault free from the financial consequences of such conduct.[3]

---

3. A court may consider whether more precise language would have removed all reasonable doubt when it is determining whether an ambiguity exists in an insurance policy. See

Plaintiff contends that public policy is no bar to recovery, and cites in support of this position, Eisenman v. Hornberger, 438 Pa. 46, 264 A. 2d 673 (1970). Neither Eisenman, Mohn v. American Casualty Co., 458 Pa. 576, 326 A. 2d 346 (1974), nor Wetzel v. Westinghouse Electric Corp., 258 Pa. Superior Ct. 500, 393 A. 2d 470 (1978), sound the death knell for the public policy against permitting insurance recovery for damages caused by an actor committing an intentional tort or crime. Indeed, all of these cases are factually distinguishable from the instant case. In Eisenman, the insured unintentionally caused a fire while committing a burglary. Therefore, neither the policy exclusion for damage intentionally caused by the insured nor public policy proscribed the liability of the insurer.[4] In Mohn, in which the insured was shot while fleeing the scene of a burglary, the court reasoned that allowing the insured's father, an innocent beneficiary, to recover the expenses he incurred as a result of his son's hospitalization did not violate public policy. In Wetzel, as well, the beneficiary's innocence was deemed highly relevant in allowing a recovery, and as in Mohn, it was the insured who was fatally injured.

It is clear that Eisenman, Mohn, and Wetzel do not preclude the granting of summary judgment.

---

Celley v. Mutual Benefit, 229 Pa. Superior Ct. 475, 482, 324 A. 2d 430, 434 (1974). This analysis, however, cannot be legitimately employed to create an ambiguity that is then used to expand coverage in favor of the insured. As discussed above, plaintiff/insured could have no reasonable doubt regarding whether he could insure against the financial consequences of any assault and battery he might commit.

4. The courts of the State of Arizona make this distinction. See Clark v. Allstate Ins. Co., supra.

Moreover, this court concludes that these cases do not reject out of hand or totally preclude a denial of insurance benefits for intentionally caused harm on the ground of public policy. The conclusion that the public policy of Pennsylvania forbids insurance protection against the consequences of an intentional tort or crime is supported by Wilson v. Maryland Casualty Co., 377 Pa. 588, 589, fn. 1, 105 A. 2d 304, 305, fn. 1 (1954), in which our Supreme Court noted that: "[A] person *could not* contract for idemnity against liability for damage or injury caused by his own wilful act, much less an assault and battery committed by him. A contract to insure against such liability would obviously be void as being in violation of public policy." (Emphasis in original.)[5] Denying recovery here is not the equivalent of judicially "rewriting" the insurance policy and including a criminal conduct exclusion where there was none before. The insurance policy does not cover damages inflicted in an assault and battery because such conduct is at least an intentional tort. In this case, a jury convicted the plaintiff/insured of criminal assault. Even had plaintiff contracted to insure against the consequences of this conduct, the contract would be void as against the public policy of Pennsylvania.

In conclusion, "[i]n construing the language of . . . a policy of insurance, the standard is what a normally constituted person would have understood it to mean in its actual setting." Atlantic Lines Ltd. v. American Motorists Insurance Co., 547 F. 2d 11, 13 (2d Cir. 1976). Plaintiff could not

5. See also State v. Glens Falls Liability Ins. Co., 137 Vt. 313, fn. 2, 404 A. 2d 101, 104 fn. 2 (1979) ("[L]iability policies covering damage 'caused by an occurrence' suggest no limitation other than the public policy against recovery for intentionally caused damage. . . .")

reasonably have expected his homeowner's insurance to provide coverage for damages that he might inflict by assaulting another person. As discussed above, Hionis, as subsequently construed and applied by our Supreme and Superior Courts does not, on these facts, require Harleysville to prove that plaintiff knew that the damages he intended or expected to inflict while committing an intentional tort or crime were not covered by the homeowner's policy. This much was evident from a clear and nontechnical definition of occurrence. Therefore, no material issues of fact exist, and defendant insurer is entitled to judgment as a matter of law.

## ORDER

And now, December 20, 1979, defendant's motion for summary judgment is granted. Defendant's motion for judgment on the pleadings is denied.