ACANDS, INC., Appellee,

v.

The **AETNA CASUALTY AND SURETY COMPANY** and The Travelers Indemnity Company and the Travelers Insurance Company, Appellants,

v.

**ARMSTRONG WORLD INDUSTRIES, INC.**

Nos. 83–1927, 83–1928.

United States Court of Appeals, Third Circuit.

Argued Oct. 22, 1984.

Decided June 17, 1985.

Joseph G. Manta, John C. Sullivan, Frumkin & Manta, Philadelphia, Pa., for amicus, Allstate.

Mark L. Silbersack, Gerald V. Weigle, Jr., Patrick J. Pascarella, Dinsmore & Shohl, Cincinnati, Ohio, for amicus, Liberty Mutual.

Stewart Dalzell, Sharon L. Klingelsmith, Professor Tybe Ann Brett, Drinker, Biddle & Reath, Philadelphia, Pa., for amicus, Lumbermens Mutual.

Donald E. Seymour, Peter J. Kalis, Susan T. Gelder, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for amicus, H.K. Porter Co.

James K. Killelea, Floyd H. Knowlton, George A. McKean, S. Gordon Elkins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Barry R. Ostrager, Peter J. Schlesinger (argued), David E. Bamberger, David M. Cain, Simpson, Thacher & Bartlett, New York City, for appellant, The Travelers.

Richard K. Masterson, Margaret Mary Maguire, Masterson, Braunfeld, Himsworth & Maguire, Norristown, Pa., James E. Rocap, III, Stephen L. Nightingale (argued), Miller, Cassidy, Larroca & Lewin, Washington, D.C., for appellant, Aetna.

Frank H. Griffin, III (argued), Mark C. Radhert, Dechert, Price & Rhoads, Philadelphia, for appellee ACandS.

John F. Triggs, Anthony T. Coles, Slade & Pellman, New York City, for amicus, Emons Industries.

Jerold Oshinsky, Anderson Baker Kill & Olick, Washington, D.C., for amicus, Keene Corp.

E. Judge Elderkin, William R. Irwin, Donald W. Brown, Brobeck, Phleger & Harrison, San Francisco, Cal., for amicus, Fibreboard Corp.

Richard M. Shusterman, David E. Sandel, Jr., Randy J. Maslow, White and Williams, Philadelphia, Pa., for amicus, Ins. Co. of North America.

James J. Restivo, Jr., Michael J. Betts, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for amicus, Pittsburg Corning.

Before SEITZ and ADAMS, Circuit Judges, and FISHER, District Judge.[*]

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendants Aetna Casualty and Surety Company ("Aetna") and Travelers Indemnity Company and Travelers Insurance Company ("Travelers") appeal from a judgment of the district court made final pursuant to Fed.R.Civ.P. 54(b) that granted plaintiff ACandS, Inc.'s ("ACandS") motion for partial summary judgment in this declaratory judgment action. Subject matter jurisdiction in the district court existed pursuant to 28 U.S.C. § 1332. This court has appellate jurisdiction under 28 U.S.C. § 1291.

### I. *Background*

ACandS is a contracting company that installs insulation products. From 1958 until approximately 1973 ACandS used products containing asbestos. ACandS is currently a defendant in thousands of lawsuits in which plaintiffs have alleged personal injury as a result of exposure to these products. Such claims have in turn generated extremely difficult problems as to the insurance obligations of liability insurance carriers.

Asbestosis, mesothelioma, and broncheogenic carcinoma are the three asbestos-related diseases that have been brought to this court's attention. The parties do not agree on the precise etiology of each of these diseases. It is undisputed, however, that the inhalation of asbestos particles may cause these diseases, and that decades may elapse between the inhalation of asbestos and manifestation of the diseases.

It is undisputed for the purposes of this appeal that ACandS purchased comprehensive general liability insurance policies for the entire period in which it used asbestos products. Travelers issued these policies from 1958 to 1963, and Aetna issued the policies for the rest of the period in which ACandS used asbestos products. Aetna continued to issue policies after ACandS stopped using asbestos, up until 1981.

When persons alleging asbestos-related injuries began to bring actions against ACandS, it called upon its insurers to provide legal defense to these actions and indemnification for any losses incurred. Disputes arose among ACandS, Aetna, and Travelers concerning the interpretation of the policies in the asbestos context. Most significantly, Aetna and Travelers disagreed between themselves as to which policies covered these claims.

ACandS brought this declaratory judgment action against Aetna and Travelers in order to determine their obligations to it under the respective policies. The district court, 500 F.Supp. 511, dismissed the case as nonjusticiable, and that dismissal was reversed by this court. *ACandS, Inc. v. Aetna,* 666 F.2d 819 (3d Cir.1981). On remand, ACandS moved for partial summary judgment arguing, among other things, that coverage[1] is triggered on all policies in effect from the time a personal injury plaintiff was exposed to asbestos until the time asbestos-related disease manifested it-

---

[*] Hon. Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

**1.** The insurers' duties under the policies will be referred to collectively throughout this opinion as "coverage" for "losses." If a particular discussion refers only to either the duty to indemnify or the duty to defend, the opinion will so indicate.

self. The district court granted ACandS' motion, declaring that "exposure," "exposure-in-residence,"[2] and "manifestation" all trigger coverage under the policies. The court decided related issues submitted for summary judgment that also will be addressed herein.

## II. *Trigger of Coverage*

This appeal requires us to interpret insurance contracts between ACandS and its insurers, and to determine what events must have occurred during the term of a policy to trigger that policy's coverage in an asbestos-related personal injury action. Under Pennsylvania law, which we deem controlling,[3] "[t]he task of interpreting a contract is generally performed by a court .... The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983). Thus, in order to determine how coverage is triggered under these liability insurance policies, we turn to the policy language.

The language with respect to this issue changes somewhat over the various policy years, but none of the parties attribute any special significance to these changes. The policies in force from 1976 until 1981 are thus representative. They provide:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> bodily injury or
>
> property damage
>
> to which this insurance applies, caused by an occurrence....

The definitional sections further provide: "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period ... "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury.

Aetna argues that manifestation of disease is the sole trigger of coverage under the policies. The strongest form of this argument is as follows. The policy language is unambiguous, and application of the policy language in the asbestos context is clear. Asbestosis, mesothelioma, and broncheogenic carcinoma are diseases and, therefore, "bodily injury" must mean "disease" in this context. Disease can only be said to "occur" when it is diagnosable as a disease, i.e., when it becomes manifest. Aetna also argues that the district court's contrary determinations were based upon assumptions of material medical facts which were disputed and that, therefore, it was impermissible for the district court to grant the motion for summary judgment.

Travelers contends that exposure to asbestos is the sole trigger of coverage under the policies. It argues that there can be no real dispute that tissue damage occurs nearly contemporaneously with the inhalation of asbestos. Consequently, the argument goes, "bodily injury" occurs at the time of exposure and, therefore, exposure is the proper trigger of coverage. Travelers further argues that it and ACandS both intended this trigger of coverage, at least with regard to the Travelers policies. Finally, it argues that the district court's judgment was erroneous because it ignored disputed issues of material fact.

ACandS argues that exposure and manifestation both constitute "bodily injury." It also argues that asbestos-related disease is progressive, suggesting that tissue damage occurs continuously from exposure through manifestation, and that this "exposure-in-residence" is also "bodily injury."

---

**2.** "Exposure-in-residence" is characterized in ACandS' brief as "the further progression of injury that occurs even after exposure has ended."

**3.** On appeal, Travelers suggests that perhaps California law should apply, without indicating that there is an actual conflict between Pennsylvania and California law in this context. We cannot say that the district court erred in applying Pennsylvania law, since Travelers did not raise this issue in the district court. Indeed, we read Travelers' district court briefs as assuming that Pennsylvania law does apply.

Thus, in ACandS' view, exposure, exposure-in-residence, and manifestation all trigger coverage. ACandS supports this position by arguing that the application of the policy language in this context is unclear, that Pennsylvania law applies, and that Pennsylvania law requires ambiguities in the application of insurance policies to be construed in favor of the insured.

All parties agree, and it is evident from the policy language, that the trigger of coverage issue turns on the meaning of the phrase "bodily injury." Analogous terms have been interpreted in the asbestos context in cases considering statutes of limitations, workmen's compensation statutes, and health insurance policies. Those cases are not particularly relevant here, however, because the phrase operates differently in those contexts. For example, statutes of limitations have generally been interpreted to provide for manifestation of the disease as the time of "injury," because to do otherwise would result in the barring of claims even before the plaintiffs knew of their existence. *See Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034, 1043–44 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

The phrase "bodily injury" has also been interpreted by four courts of appeals in this very context, i.e., on the issue of trigger of coverage under comprehensive general liability policies in asbestos-related personal injury actions. Those courts, under the rules of construction of various states, have arrived at a variety of interpretations. These interpretations include all of the positions espoused by the parties in this action. *See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983) (manifestation); *Keene*, 667 F.2d 1034 (exposure, exposure-in-residence, and manifestation); *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (exposure); *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir.1980), *clarified*, 657 F.2d 814 (1981), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (exposure). Unfortunately, the Supreme Court of Pennsylvania has not yet addressed this issue.

The district judge, having considered all of the interpretations discussed above, determined that the insurance contracts fail to precisely articulate the trigger of coverage and are, therefore, ambiguous. He then decided that the ambiguity should be construed in favor of the insured, and, following *Keene*, declared that exposure, exposure-in-residence, and manifestation each trigger coverage under the policies. He did so without a medical record, citing *Keene* for the proposition that "the 'details' of asbestos diseases and their development are 'not relevant' to the issues at bar." 576 F.Supp. 936, 938 n. 3. We review the district court's determinations of state law by a plenary standard. *Compagnie des Bauxites de Guinee v. Insurance Company of North America*, 724 F.2d 369, 372 (3d Cir.1983).

The district court's decision in this case was cited with approval by the Pennsylvania Superior Court in *Vale Chemical Company v. Hartford Accident and Indemnity Company*, 490 A.2d 896, 901–902 (Pa. Super.Ct.1985), *petition for allowance of appeal filed*, No. 491 E.D. (1985). That court, also applying *Keene*, reasoned that, in the context of a disease with a long latency period, the term " 'bodily injury' ... simply lack[s] the precision necessary to identify a point when the physical damage or debility occurred so as to determine adequately at which time coverage was triggered." *Id.* at 901 ("bodily injury" in DES case occurs continuously from the time of first exposure until manifestation). Thus, it followed *Keene* which interpreted " 'bodily injury' to mean any part of the single injurious process that asbestos-related diseases entail." *Keene*, 667 F.2d at

1047. In addition, two other Pennsylvania courts have been persuaded by *Keene's* logic. *See Techalloy Co., Inc. v. Reliance Insurance Co.,* —— Pa.Super. ——, 487 A.2d 820, 825–26 (1984); *Crown Cork & Seal Co. v. Aetna Casualty & Surety Co.,* No. 1292, Slip op. (Com.P. August 2, 1983).

Since the Supreme Court of Pennsylvania has not considered the issue presented here, our role is to predict what that court would hold in this case. We are mindful in undertaking this task that "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273–74 (3d Cir.1985).

Because of the unique character of the problem created by the policy language in the context of diseases with long latency periods, there is insufficient data to convince us that the Supreme Court of Pennsylvania would disagree with *Vale.* Indeed, as we have said, the other Pennsylvania courts that have addressed this issue support the *Vale* approach. Therefore, we believe that *Vale* authoritatively states the present law of Pennsylvania. It is not our function sitting in diversity to analyze the wisdom of the controlling state law.

*Vale* mandates that we reject defendants' argument that summary judgment was inappropriate without factual determinations concerning the details of asbestos-related disease. In the alternative, however, defendants seek to distinguish *Vale* and present two additional arguments for reversal. They argue first that ambiguous provisions of an insurance contract should not be resolved against the insurer unless extrinsic evidence fails to resolve the ambiguity. They also argue that the rule of strict construction is inapplicable where the insured is a large commercial entity that bargained with the insurance company.

■ But neither *Vale* nor Pennsylvania Supreme Court precedent indicates that the defendants' proffered distinctions are relevant to the rule that insurance policies must be strictly construed against insurers. The *Vale* court cited with approval *Eli Lilly and Company v. The Home Insurance Company,* No. 82–0669, slip op. (D.D.C. April 12, 1984), noting that the *Lilly* court "ignored the insurer's evidence that [the insured's] actual intent was to purchase single-trigger coverage" because of the "strong public policy in favor of promoting coverage." *Vale,* at 901. Moreover, the Supreme Court of Pennsylvania has applied the rule of strict construction in cases in which the insured was a commercial entity. *E.g., Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). Therefore, we are not free under Pennsylvania law to distinguish *Vale.* Rather, we are constrained to apply it, and to affirm the district court. We hold that exposure, exposure-in-residence, and manifestation all constitute "bodily injury" within the meaning of the policies.

### III. *Proration*

■ The district court also granted ACandS' motion for summary judgment with respect to the allocation of losses among the respective policies when coverage under more than one policy has been triggered in a particular case. It declared that, subject to policy limits, deductibles, and "other insurance" clauses, each triggered policy would be required to respond in full to ACandS' losses. The district court noted, however, that ACandS would not be permitted to obtain multiple coverage for a single loss by "stacking policies." Because ACandS has not cross-appealed, the latter issue is not before us.

The district court relied on the plain language of the policies for its interpretation. The insurers contracted to indemnify

ACandS for "all sums which [it] shall become legally obligated to pay as damages because of ... bodily injury ... which occurs during the policy period." The district court interpreted the phrase "all sums" to provide for full coverage once coverage under a policy was triggered.

The defendants contend that the district court's declaration was erroneous. They argue that if exposure or exposure-in-residence are declared to be "bodily injury," then a particular policy only covers the pro rata share of losses for the bodily injury that actually occurred during that policy period.

The district court did not err in deciding that, subject to the possible effect of "other insurance" clauses, there is no proration of losses under a policy once coverage is triggered. Defendants' argument boils down to Aetna's assertion in its reply brief that "if a portion of [the period in which bodily injury occurs] is self-insured, a portion of the damages received from ACandS is attributable to injury that did *not* 'result' or 'occur' during the policy period." (Emphasis in the original.) Although this may be true, the language of the policy makes it irrelevant. The policies require the insurers to pay all sums which ACandS becomes "legally obligated to pay" because of bodily injury during the policy period. It is uncontested that under principles of tort law ACandS may be held fully liable for a personal injury plaintiff's damages caused in part by ACandS' asbestos during a particular period, even though plaintiff's damages may also have been caused, in part, at other times. *See, e.g., Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1094–96 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). It follows that if a plaintiff's damages are caused in part during an insured period, it is irrelevant to ACandS' legal obligations and, therefore, to the insurer's liability that they were also caused, in part,

during another period. *See Keene*, 667 F.2d at 1047–49. We think the Supreme Court of Pennsylvania would agree.

### IV. *"Other Insurance" Clauses*

The district court observed in its opinion that the policies' "other insurance" clauses would provide the method for allocating liability among the various policies, but that these clauses would not affect an insurer's primary duty to indemnify ACandS. The district court's order does not mention the "other insurance" clauses specifically, but the order does provide that, once triggered, a policy "is required to respond in full to ACandS' legal liability."

It is not apparent that ACandS' motion for summary judgment called upon the district court to interpret the "other insurance" clauses, and it is not clear whether the district court's comments with respect to this issue were intended to be incorporated into the order which was made final for the purposes of appellate review. Aetna argues, however, that the district court did purport to interpret these clauses, and that its interpretation is properly before us. Moreover, Aetna contends that the district court erred because, under Pennsylvania law, an insurer is obligated to indemnify its insured only for the portion of liability provided for in a policy's "other insurance" clause. *See Vrabel v. Scholler*, 369 Pa. 235, 242–43, 85 A.2d 858, 861–62 (1952). To the extent that the judgment before us may be read to incorporate an interpretation of the "other insurance" clauses, it will be vacated so that the district court may consider Aetna's argument as to Pennsylvania law.

### V. *The Duty to Defend*

■ The district court also interpreted policy language that provides for legal defense "[w]ith respect to such insurance as is afforded by" the policies as requiring the insurers to defend ACandS indefinitely, without respect to policy limits.[4] Under

---

4. The policy language was changed after January 1, 1968. Interpretation of this portion of

subsequent policies is not disputed in this appeal.

the district court's interpretation, therefore, the insurer can be required to defend actions in which it cannot possibly be liable for indemnification because policy limits have been exhausted.

The district court was in error in this regard. In *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954), the Pennsylvania Supreme Court interpreted virtually identical language, and reasoned that the insurer "is not required to defend if it would not be bound to indemnify the insured even though the claim against [the insured] should prevail." *Id.* at 594, 105 A.2d at 307. Admittedly, *Wilson* involved limitations on *types* of coverage and the case at bar involves limitations on *amounts* of coverage. But this distinction is of no consequence. *Liberty Mutual Insurance Co. v. Mead Corp.*, 219 Ga. 6, 131 S.E.2d 534 (1963). If, at the outset of a particular action, it is properly established that the insurer cannot possibly be liable for indemnification because policy limits have been exhausted, then the policy language does not impose a duty to defend that action under Pennsylvania law.

We emphasize that we do no more than reverse the district court's judgment granting ACandS' motion for partial summary judgment insofar as it declares that the duty to defend is not linked to policy limits. This appeal does not require us to consider, for instance, whether or under what circumstances an insurer may terminate its defense of a claim in "mid-course." *See, e.g., Lumbermen's Mutual Casualty Co. v. McCarthy*, 90 N.H. 320, 8 A.2d 750 (1939). *Cf. American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.*, 752 F.2d 71, 75 (3d Cir.1985).

■ Finally, the district court declared that ACandS may designate the policy under which a claim is to be defended, which may be the same as or different from the policy designated for indemnification. We will vacate the declaration insofar as it assumes that, in a case in which coverage under more than one policy has been triggered, ACandS may designate a particular policy for full indemnification. We do so without considering the possible effect of the "other insurance" provisions of the policies. *See supra,* section IV. In addition, we will reverse the declaration insofar as it grants ACandS the power to bifurcate the duty to defend from the duty to indemnify.

■ It is undisputed that beginning May 1, 1969, the policy language explicitly gave the insurer "the right" to defend ACandS in any suit in which the insurer had the "duty to defend." The district court was without power to abrogate this contract right.

The right to defend was not explicitly provided for, however, in the clauses which created the duty to defend in the earlier policies. Still, defendants argue that those policies provide the insurers with a right to defend whenever the insurers have a duty to defend.

■ It is undisputed that the insurers are entitled to prompt notice of occurrences and suits that may give rise to liability and that the insurers have the right to settle claims as they deem appropriate. The Pennsylvania Supreme Court has stated that "[t]he very purpose of the rule requiring notice of the suit to be given to the indemnitor is to inform him of his ultimate liability and assure to him the opportunity to defend." *Renschler v. Pizano*, 329 Pa. 249, 255, 198 A. 33, 36 (1938). Moreover, the right to control settlement contemplates the right to control the defense. *See, e.g., C. Schmidt & Sons Brewing Co. v. Travelers' Ins. Co.*, 244 Pa. 286, 288–89, 90 A. 653, 654 (1914). Therefore, we predict that the Supreme Court of Pennsylvania would hold that the duty to defend a covered action implies the right to defend such an action, at least where the insurer has the right to receive prompt notice of an occurrence and to control settlement. This is consistent with general principles of insurance law. *See* 7C J. Appleman, *Insur-*

*ance Law and Practice* § 4681 (1979) and cases cited therein. ACandS has cited no precedent to the contrary.

## VI.

Our disposition of this case does not rely on the materials presented by Amici Curiae H.K. Porter Company, Inc., Keene Corporation, Fibreboard Corporation, Pittsburgh Corning Corporation, and Emons Industries, Inc. that Amici Curiae Liberty Mutual Insurance Co. and Insurance Company of North America find objectionable. The latter Amici's motion to strike the former Amici's brief and appendix will be denied as moot.

The judgment of the district court will be affirmed insofar as it declares that manifestation, exposure-in-residence, and exposure each constitute "bodily injury" within the meaning of the policies and that, subject to the possible effect of "other insurance" clauses, proration is not provided for in the policies. It will be reversed insofar as it declares that the duty to defend is not linked to policy limits, and that the duty to defend in these policies does not include the right to defend. The judgment will be vacated insofar as it declares that the "other insurance" clauses do not affect an insurer's duty to indemnify in full, thereby affording the parties an opportunity to present their arguments as to Pennsylvania law. Each party shall bear its own costs.