914 F.2d 384
 Terry L. PATTERSON and Jeni L. Patterson, his wife, Appellants,
v.
AMERICAN BOSCH CORPORATION; United Technology Diesel
Systems; and American Diesel Corporation t/d/b/a
United Technology Diesel Systems.
 No. 90-3006.
 United States Court of Appeals,
Third Circuit.
 Argued June 1, 1990.
Decided Sept. 11, 1990.
Rehearing and Rehearing In Banc
Denied Oct. 16, 1990.
 
 Samuel J. Cordes (argued), Jonathan E. Jones, Ogg, Jones, Desimone & Ignelzi, Pittsburgh, Pa., for appellants.
 Anthony J. Basinski (argued), Jane S. Barnes, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellees.
 Before BECKER, HUTCHINSON and GARTH, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an appeal by plaintiffs, Terry and Jeni Patterson, from a grant of summary judgment in favor of the defendants, American Bosch Corporation ("American Bosch") and United Technology Diesel Systems ("United Technology"), in a personal injury action instituted in Pennsylvania state court (and governed by Pennsylvania law) and removed to federal court on grounds of diversity of citizenship. The plaintiffs challenge the district court's conclusion that the filing of a praecipe for a writ of summons did not toll the statute of limitations because plaintiffs' former counsel, after making two unsuccessful attempts at service, made no further service attempts for the next seventeen months. Because the plaintiffs' present counsel did not serve the defendants until after the expiration of the applicable statutes of limitations, the district court held that the complaint was time-barred. In essence, the appeal requires us to interpret the scope of the Pennsylvania Supreme Court's opinion in Lamp v. Heyman, 469 Pa. 465, 366 A.2d 882 (1976), which held that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." Id. at 478, 366 A.2d at 889.
 
 
 2
 The district court agreed with defendants that Lamp imposed upon plaintiffs an ongoing good-faith obligation to effect service of process. Thus, the court concluded that counsel's failure to pursue service of process nullified the tolling effect normally given to the filing of a praecipe for a writ of summons. However, given the words so carefully chosen by the Pennsylvania Supreme Court to dispose of Lamp, and what we perceive to be the narrow issue addressed in that case--the continued viability of the venerable, though discredited, practice among Pennsylvania attorneys of commencing an action by filing a praecipe, but then delaying or preventing service of process upon the defendant so that a settlement could be effected without incurring extensive legal fees--we are not inclined, as a federal court sitting in diversity, to construe the court's opinion so broadly. Rather, we believe that the plaintiffs' two good-faith efforts to serve the writ were sufficient under Lamp to toll the applicable statute of limitations, so that the complaint was timely filed. We will therefore reverse and remand for further proceedings.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 On December 4, 1986, Terry Patterson was injured at his workplace in an accident involving a hydraulic cranking system that was allegedly manufactured and sold by American Bosch and United Technology. The plaintiffs allege that Mr. Patterson's employer purchased this device on or about January 1, 1984.
 
 
 4
 On August 31, 1987, the Pattersons' former attorney filed a praecipe for a writ of summons with the prothonotary of the Court of Common Pleas of Allegheny County. The attorney had previously been advised by the Corporation Bureau of the Pennsylvania Department of State that the Philadelphia office of the Corporation Trust Company was American Bosch's registered agent for service of process in the Commonwealth. On September 2, 1987, the attorney delivered the writ to the Allegheny County Sheriff's Office with instructions to serve American Bosch "c/o C.T. Systems" at an address in Pittsburgh.[1] The attorney noted that "[o]ther defendants will be served by certified mail as they are out-of-state defendants." The sheriff returned the writ on September 8, 1987 with a notation that American Bosch was not found at the address supplied.
 
 
 5
 On October 15, 1987, the plaintiffs' attorney filed a praecipe for reissuance of the writ. On October 19, 1987, the attorney again delivered the writ to the sheriff, this time with instructions to deputize the Philadelphia sheriff to serve both defendants at the Corporation Trust Company's office in Philadelphia. On November 5, 1987, the Philadelphia sheriff returned the writ with the notation "CT not agents for def[endan]ts."
 
 
 6
 The attorney made no further efforts to serve the defendants for the next seventeen months.[2] On May 1, 1989, the plaintiffs engaged new counsel, who filed a praecipe for reissuance of the writ of summons the next day. On May 5, 1989, this attorney served United Technology by certified mail in Springfield, Massachusetts. On May 26, 1989, he served American Bosch by certified mail in Dearborn, Michigan.[3]
 
 
 7
 The plaintiffs then filed a complaint that pleaded personal injury claims under negligence, strict liability, and breach of warranty theories.[4] The statute of limitations governing the plaintiffs' negligence and strict liability claims, 42 Pa.Cons.Stat.Ann. Sec. 5524 (Purdon Supp.1989), ran on December 4, 1988, two years after Mr. Patterson's injury. The statute of limitations on the plaintiffs' breach of warranty claim, 13 Pa.Cons.Stat.Ann. Sec. 2725 (Purdon 1984), expired on January 1, 1988, four years after Mr. Patterson's employer allegedly purchased the hydraulic starter and cranking system from the defendants or their agents. Thus, unless these statutes were previously tolled, the plaintiffs' claims were time-barred when the plaintiffs' new counsel served the defendants in May of 1989.
 
 
 8
 On August 4, 1989, the defendants removed the case to federal district court and moved to dismiss the complaint as barred by the statute of limitations. The district court converted the motion into a motion for summary judgment and granted it on December 11, 1989. The court found that the plaintiffs' first two service attempts were in good faith. However, the court held that the plaintiffs' subsequent failure to pursue service of process nullified the tolling effect of the filing of the praecipes in August and October of 1987. This appeal followed.
 
 II. DISCUSSION
 
 9
 As a federal court sitting in diversity, we look to state law to determine when an action is commenced for purposes of the state's statute of limitations. Walker v. Armco Steel Corp., 446 U.S. 740, 752-53, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). Our review of the district court's interpretation of state law is plenary. Compagnie des Bauxites de Guinee v. Insurance Co. of North America, 724 F.2d 369, 371 (3d Cir.1983).
 
 
 10
 This appeal requires us to determine whether the plaintiffs' two attempts to serve the writ of summons upon the defendants in 1987 were sufficient to toll the statute of limitations, or whether the plaintiffs were further obliged to undertake ongoing good-faith efforts to effectuate service. To resolve this issue, it is necessary to review the background, holding and progeny of Lamp v. Heyman, 469 Pa. 465, 366 A.2d 882 (1976), the seminal Pennsylvania Supreme Court decision on a plaintiff's service of process obligations when actions are instituted by summons.
 
 A. The Pennsylvania Procedural Rule
 
 11
 Rule 1007(1) of the Pennsylvania Rules of Civil Procedure provides that an action may be commenced by filing with the prothonotary a praecipe for a writ of summons,[5] "irrespective of whether the prothonotary issues the writ or the sheriff serves it." Salay v. Braun, 427 Pa. 480, 484, 235 A.2d 368, 371 (1967). The writ of summons may be served within the Commonwealth within thirty days of issuance. Pa.R.Civ.P. 401(a). However, Pa.R.Civ.P. 401(b)(2) provides that "[a] writ may be reissued ... at any time and any number of times." The Pennsylvania Supreme Court has construed this provision to mean that a writ may be reissued any time within an "equivalent period," i.e., a period "which, measured from the date of original issuance of the writ, or the date of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for the bringing of the action." Zarlinsky v. Laudenslager, 402 Pa. 290, 295, 167 A.2d 317, 320 (1961); see Note, The Zarlinsky Rule: A Judicial Period of Limitations, 34 U.Pitt.L.Rev. 625, 626-29 (1973). Furthermore, each valid reissuance of the writ initiates a new equivalent period during which the writ may again be reissued. Lamp, 469 Pa. at 471, 366 A.2d at 885; Goodrich-Amram, Standard Pennsylvania Practice 2d, Sec. 13.149 (1981).
 
 B. Lamp and its Progeny
 
 12
 Over the years, the Commonwealth's relatively liberal rules for commencing an action gave rise to an informal practice among plaintiffs' attorneys in Pennsylvania of effectively tolling the statute of limitations by filing a praecipe, but then delaying service of process in order to give an attorney additional time to engage in settlement discussions with the defendant who was, in the absence of service of process, not obliged to incur the expense of retaining counsel. Depending on the local practice, attorneys would accomplish this delay by directing the prothonotary or the sheriff to hold the writ, by personally retaining the writ and not delivering it to the sheriff for service, or by failing to pay the service fee.[6]
 
 
 13
 The Pennsylvania Supreme Court condemned this practice in Lamp. The plaintiff's attorney in that case had filed a praecipe on August 28, 1969, two days before the expiration of the two-year statute of limitations on his client's personal injury claim. The attorney instructed the prothonotary to issue the writ of summons, but not deliver the writ to the sheriff for service. Thus, the writ expired, unserved, after one month. On April 9, 1970, the attorney filed a praecipe for reissuance of the writ and again the writ was not served. On June 4, 1970, the attorney filed a third praecipe, and the defendants were served shortly thereafter--almost three years after the plaintiff's injury, but within two years of the filing of the first praecipe.
 
 The court concluded that
 
 14
 there is too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a praecipe for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service. In addition, we find that such a rule is inconsistent with the policy underlying statutes of limitation of avoiding stale claims, and with that underlying our court rules of making the processes of justice as speedy and efficient as possible.
 
 
 15
 469 Pa. at 477, 366 A.2d at 888-89 (footnotes omitted). Accordingly, the court exercised its supervisory power over the Pennsylvania courts to announce a new rule that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." Id. at 478, 366 A.2d at 889.[7] The court also held that plaintiffs must comply with "local practice as to the delivery of the writ to the sheriff for service." Id.
 
 
 16
 Subsequent Pennsylvania decisions applying Lamp have illuminated the contours of its holding. In Farinacci v. Beaver County Industrial Development Authority, 510 Pa. 589, 511 A.2d 757 (1986), the Pennsylvania Supreme Court stated that
 
 
 17
 Lamp requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action. Although this good-faith requirement is not apparent from a reading of the rule itself, we interpret the rule mindful of the context in which it was announced. The purpose for the rule, as stated in Lamp, "is to avoid the situation in which a plaintiff can bring an action, but by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." 469 Pa. at 478, 366 A.2d at 889 [Emphasis supplied]; see also Jacob v. New Kensington Y.M.C.A., 312 Pa.Super. 533, 459 A.2d 350 (1983).
 
 
 18
 In each case, where noncompliance with Lamp is alleged, the court must determine in its sound discretion whether a good-faith effort to effectuate service was made.
 
 
 19
 510 Pa. at 594, 511 A.2d at 759. In Farinacci, the plaintiffs' attorney filed a praecipe on the last day of the two-year limitation for personal injury claims, but failed to provide service instructions or pay the sheriff's fee. The court upheld the trial court's dismissal of the action, concluding that the plaintiffs had "failed to provide an explanation for counsel's inadvertence which could substantiate a finding that plaintiffs made a good-faith effort to effectuate service of the writ." 510 Pa. at 595, 511 A.2d at 760.
 
 
 20
 As in Farinacci, the post-Lamp decisions of the Pennsylvania Superior Court have focused on the plaintiff's good faith in following the procedure or local practice governing service of process. See Gutman v. Giordano, 384 Pa.Super. 78, 83-84, 557 A.2d 782, 785 (1989) (Lamp requirement satisfied where plaintiff followed correct procedure in obtaining writ and made good-faith service attempts at defendant's place of employment); see also Leidich v. Franklin, 394 Pa.Super. 302, 575 A.2d 914, 919 (1990) (Lamp requirement satisfied where plaintiff's timely, but technically defective, mail service put the defendants on notice of commencement of action); Gould v. Nazareth Hospital, 354 Pa.Super. 248, 252-53, 511 A.2d 855, 858 (1986) (Lamp requirement satisfied where plaintiff complied with procedure for issuance of writ and "failure to attempt service on appellee within the life of the writ lies with the sheriff's office, and not the plaintiff"). However, the closest post-Lamp Superior Court case on point is Beck v. Minestrella, 264 Pa.Super. 609, 401 A.2d 762 (1979). There the plaintiffs filed a praecipe for a writ of summons two weeks before the expiration of the statute of limitations. The writ was properly delivered to the sheriff, who was unable to locate the defendants. After almost two years had passed, the plaintiffs again attempted to serve the defendants and the sheriff was again unsuccessful in locating them. Three months later, service on the defendants was finally made. Despite the delay between the initial issuance of the writ and the actual service on the defendants, the Superior Court found that the plaintiffs' action was timely filed, stating:
 
 
 21
 We think it is clear that Lamp is not applicable. The plaintiffs here in each instance delivered to the sheriff for service the writ, the complaint in trespass, and the reinstated complaint. Each such issuance and delivery kept the action alive for a period equal to the original period of limitation applicable to the action. Zarlinsky v. Laudenslager, 402 Pa. 290, 167 A.2d 317 (1961). At no time does the record indicate that he did anything to impede the service of the various papers or engage in any conduct of any kind "to stall in its tracks the legal machinery."
 
 
 22
 264 Pa.Super. at 614, 401 A.2d at 764.
 
 
 23
 In nearly all of the reported cases in which Lamp was applied to nullify the tolling effect of the filing of a praecipe or a complaint, plaintiffs failed to comply with the practice or procedure governing service of process. See, e.g., Feher by Feher v. Altman, 357 Pa.Super. 50, 515 A.2d 317 (1986) (plaintiff failed to provide service instructions or pay service fee), allocatur denied, 515 Pa. 622, 531 A.2d 430 (1987); Watts v. Owens-Corning Fiberglas Corp., 353 Pa.Super. 267, 509 A.2d 1268 (1986) (plaintiff failed to deliver writ to sheriff), allocatur denied, 514 Pa. 632, 522 A.2d 559 (1987); Weiss v. Equibank, 313 Pa.Super. 446, 460 A.2d 271 (1983) (plaintiffs failed to provide service instructions or pay service fee); Pannill v. Seahorne, 278 Pa.Super. 562, 420 A.2d 684 (1980) (plaintiffs failed to deliver the complaint to the sheriff with directions for service); Delphus v. Kastanek, 267 Pa.Super. 26, 405 A.2d 1285 (1979) (plaintiffs failed to deliver writ to sheriff); Snyder v. North-South Bowl, Inc., 263 Pa.Super. 328, 397 A.2d 1232 (1979) (same); Demnyan v. Ford Motor Co., 38 Pa.D. & C.3d 542 (C.P. Washington Co.1986) (same); Corsetti v. Yezbak, 36 Pa.D. & C.3d 123 (C.P. Fayette Co.1985) (plaintiff failed to pay service fee).
 
 C. Analysis
 
 24
 The district court held that Lamp requires plaintiffs to make a continuous good-faith effort to effectuate service, from the filing of the praecipe to actual service. The court found that although the plaintiffs' two initial attempts at service were in good faith, the failure to make any further efforts to serve the defendants for the following months showed a lack of good faith. The court reasoned:
 
 
 25
 A good-faith effort to notify defendant extends beyond compliance with procedure and local rules. Stalling the legal machinery set in motion by plaintiff consists not only of affirmative conduct, but also of passive conduct such as "failing to do anything for an unreasonable period of time after filing the original writ of summons or the reissuance thereof."
 
 
 26
 App. at 72 (quoting Petrosky v. Kawasaki Heavy Industries, Ltd., 135 Pitt. Legal J. 268, 271 (C.P. Allegheny Co.1987)). The defendants endorse the district court's reasoning. We disagree.
 
 
 27
 We begin our analysis with the Lamp court's description of the narrow issue before it. The Lamp court stated that the case presented the
 
 
 28
 important question of whether, in Pennsylvania practice, a plaintiff, whose attorney files a praecipe for a writ of summons to commence an action within the time period permitted by the statute of limitations, instructs the prothonotary to issue the writ but not deliver it to the sheriff for service, and then has the writ reissued and served after that time period has expired, is barred by the statute of limitations from continuing the action.
 
 
 29
 469 Pa. at 469, 366 A.2d at 884. Further, the court assumed that if Lamp had validly commenced the action by filing a praecipe, her action would not have been time-barred, "since she effectuated service of a writ reissued well within two years" from both the date of the filing of the original praecipe and the date of the reissuance of the writ. Id. at 471-72, 366 A.2d at 885-86. The court explained that Salay v. Braun, 427 Pa. 480, 235 A.2d 368 (1967), "made it clear that a plaintiff who filed his praecipe in time acted in time to toll the statute, and that the remedy for a defendant prejudiced by the plaintiff's abuse of the rule was not in the statute of limitations, but in the non-pros doctrine."[8] Lamp, 469 Pa. at 475, 366 A.2d at 886-87.
 
 
 30
 We note additionally that, although the court easily might have imposed a continuing obligation to attempt to effect service, the court's language was quite limited in its scope and hence in its message: "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." Id. at 478, 366 A.2d at 889. That does not strike us as the stuff of which continuing obligations are made. Finally, after enunciating the new rule, the court explained:
 
 
 31
 If under local practice it is the prothonotary who both prepares the writ and delivers it to the sheriff, the plaintiff shall have done all that is required of him when he files the praecipe for the writ; the commencement of the action shall not be affected by the failure of the writ to reach the sheriff's office where the plaintiff is not responsible for that failure.
 
 
 32
 Id. at 478-79, 366 A.2d at 889 (emphasis added).
 
 
 33
 Although the above language in Lamp suggests that the court did not intend its holding to extend beyond a requirement of good-faith compliance with the requirements for obtaining and serving a writ of summons, we agree with the district court that the Pennsylvania Supreme Court has not directly addressed the question of whether a plaintiff has an ongoing good-faith duty to effectuate service of process.[9] However, we are guided in our task of predicting what the Pennsylvania Supreme Court would hold in this case, not only by its language in Lamp, but also by the decisions of the Commonwealth's intermediate appellate courts, which furnish " 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " ACandS, Inc. v. Aetna Casualty & Surety Co., 764 F.2d 968, 973 (3d Cir.1985) (quoting West v. A.T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed.139 (1940)). As noted above, the closest Pennsylvania Superior Court case is Beck. In Beck, the court held that the Lamp requirement was satisfied when the plaintiffs complied in good faith with the procedure for issuing and serving the writ of summons, despite a lengthy, unexplained delay between issuance of the initial writ and service on the defendants.
 
 
 34
 The district court relied on the decision of the Court of Common Pleas in Petrosky, which is apparently the only reported decision that directly supports the broad reading of Lamp urged by the defendants.[10] However, we believe that an analogous Pennsylvania Superior Court decision such as Beck is a more persuasive guide to Pennsylvania law. Moreover, as noted above, nearly all of the decisions applying Lamp to nullify the tolling effect of the filing of the praecipe or complaint do so because of the plaintiffs' failure to comply with the procedure or local practice for service of process. Thus, while we do not deny the force of defendants' arguments, in view of the carefully chosen language of Lamp, and the authority of Beck, we do not believe that Lamp imposes the broad service of process obligation found by the district court. In our view, the Lamp rule is satisfied once the plaintiff has complied in good faith with the procedural requirements and local practice for the issuance and service of a writ of summons. As long as the plaintiff files a praecipe for reissuance of the writ within the "equivalent period," we do not believe that Lamp dictates an additional affirmative duty to pursue service of process if the initial good-faith service attempt is unsuccessful.
 
 
 35
 In this case, we agree with the district court's finding that plaintiffs' first two service attempts constituted a good-faith effort to notify the defendants of the commencement of the action, see Farinacci, 510 Pa. at 594, 511 A.2d at 759, because the plaintiffs complied in good faith with the procedure and local practice for service of process. As in Beck, there is no allegation that the plaintiffs impeded the service of the writs once they were issued, or engaged in any other affirmative conduct designed to stall the legal machinery. We conclude that the plaintiffs' two service efforts were sufficient to satisfy the requirements of Lamp. Because the plaintiffs served both defendants within the two and four year equivalent periods following the issuance of either the initial or second writ of summons, we hold that this action was not barred by the statutes of limitations.[11]
 
 III. CONCLUSION
 
 36
 For the foregoing reasons, the district court's order granting summary judgment to defendants will be reversed and the matter will be remanded for further proceedings consistent with this opinion.
 
 GARTH, Circuit Judge, dissenting:
 
 37
 As I read the Pennsylvania Supreme Court's decision in Lamp v. Heyman, 469 Pa. 465, 366 A.2d 882 (1976), it was intended to send several "messages" to the bench and bar of the Commonwealth. First, as the majority and I agree, the "venerable Pennsylvania practice," (maj. op. at 386), of using writs issued by a prothonotary to toll a statute of limitations without the plaintiff pursuing its cause of action will no longer be tolerated. A plaintiff may no longer use service of process as a tactic for stalling or otherwise controlling litigation. Lamp, 469 Pa. at 478, 366 A.2d at 889. Second, Lamp directed that a plaintiff must make a good-faith effort to serve the defendant in question, and must not engage in a course of conduct that would stall the legal process that had been initiated by the filing of the writ. Id. It is the difference between the manner in which the majority and I construe this "second message" or instruction that requires me to dissent.
 
 
 38
 Ordinarily, I would defer to my Pennsylvania colleagues on this panel in matters that require construction of Pennsylvania law, particularly where matters of Pennsylvania procedure are involved. Here, however, it is clear to me that my colleagues have ignored Lamp 's explicit and unequivocal holding that a writ of summons will remain effective to toll the statute of limitations, providing, however, that the plaintiff does not engage in a course of conduct that stalls the legal process initiated by the filing of the writ. Id. The majority reads Lamp as resting content with a plaintiff's sole good-faith effort to serve process on the defendant, (maj. op. at 391); an effort that can then be followed by lengthy periods of inaction interspersed with endless automatic renewals of the writ just prior to the bar of the limitations period.
 
 
 39
 As the district court ruled, however, Lamp requires "continuity of good faith in effecting service" on a defendant. Patterson v. American Bosch, No. 89-1628, memorandum op. at 10 (W.D.Pa. December 11, 1989). The Pattersons' conduct, which permitted an hiatus of 17 to 18 months between their attempts to serve the defendant, effectively stalled the process initiated by their filing of the writ: a process, incidentally, that was effectively completed within a few weeks after the Pattersons engaged new counsel. Patterson, memorandum op. at 11.
 
 
 40
 Thus, as Judge McCune held, the Pattersons' conduct did not constitute the good-faith effort required by Lamp. Id. at 11. Moreover, the Pennsylvania Supreme Court made clear in Farinacci v. Beaver County Industrial Development Authority, 510 Pa. 589, 594-95, 511 A.2d 757, 759-60 (1986), that even the inadvertent nature of a plaintiff's conduct in stalling the legal process cannot prevent the limitations period from running.[1]
 
 
 41
 I cannot agree with the panel's reading of Lamp and Farinacci, and I would hold that those Pennsylvania Supreme Court authorities required the Pattersons to demonstrate an ongoing good-faith effort to serve the defendants. Accordingly, in my opinion, Judge McCune was well within his discretion, see Farinacci, 510 Pa. at 595, 511 A.2d at 759-60, in holding that the Pattersons did not meet this required standard.
 
 
 42
 * In Lamp, the Pennsylvania Supreme Court reviewed Pennsylvania's rule governing the relationship between filing a praecipe for a writ of summons and tolling the statute of limitations. Lamp, 469 Pa. 465, 366 A.2d 882. In so doing, the Court described the system in effect at that time:
 
 
 43
 [I]t has become a relatively common practice throughout the Commonwealth for attorneys to file a praecipe with the prothonotary to toll the statute of limitations but then, whether because settlement negotiations are in progress or because more time is needed to prepare the case, to delay or prevent service upon the defendant.
 
 
 44
 469 Pa. at 472, 366 A.2d at 886. Under this practice, the writ could then be reissued at any time after the original issuance for a period equivalent to that afforded by the applicable statute of limitations. Theoretically, an action could be kept alive forever in this way, with the defendant remaining ignorant of the potential suit.
 
 
 45
 The Pennsylvania Supreme Court concluded that such a system allowed too much potential for abuse and was inconsistent with the policies of maintaining efficient processes of justice and avoiding stale claims, both of which policies underlie statutes of limitations. Lamp, 469 Pa. at 477, 366 A.2d at 888-89. In deciding Lamp, the court sought to abolish this practice and sought to require plaintiffs failing to make a good-faith effort to notify defendants of the suit against them, thus preventing plaintiffs from exercising exclusive control over a cause of action for a period of time in excess of that permitted by the relevant statute of limitations. Id. Therefore, the court held that:
 
 
 46
 a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion.
 
 
 47
 469 Pa. at 478, 366 A.2d at 889 (emphasis added).
 
 
 48
 A plaintiff's unexplained inaction over a period of 17 to 18 months, as was the case here, cannot be construed as anything other than "a course of conduct which serves to stall ... the legal machinery ... just set in motion." Id. This finding is bolstered by the undisputed fact that, after the plaintiffs engaged new counsel, that attorney effected service upon the defendant in less than a month. Patterson, memorandum op. at 11.
 
 
 49
 The majority holds, however, that the 18 month hiatus is irrelevant, because the Pattersons had previously made at least one good-faith effort to serve the defendants. See maj. op. at 391. While, as recognized by Judge McCune, the initial efforts to serve the defendants did demonstrate good faith, Patterson, memorandum op. at 10, the tolling of the statute of limitations effected by those efforts cannot continue unless the good-faith effort continues. The continuous nature of a plaintiff's obligation is manifested in the Lamp court's requirement that plaintiffs "refrain[ ] from" conduct that serves to stall the litigation in its tracks. Lamp, 469 Pa. at 478, 366 A.2d at 889.
 
 
 50
 Failure to acknowledge that continuity must be an element of the good-faith requirement can only operate to restore to Pennsylvania's jurisprudence the anachronistic practice by which a plaintiff may, deliberately or otherwise, manipulate a statute of limitations so as to prolong and extend a cause of action far beyond the time permitted by the statute. Such a practice reintroduces the abusive problem that the court sought to eliminate in Lamp, i.e., it reestablishes a system under which an action may be kept alive without proper notice to the defendant, and under which stale claims are kept afloat. Such a rule effectively renders statutes of limitations indeterminate and ambiguous, defeats the very legislative purpose for their enactment, and provides no repose for a defendant.
 
 
 51
 Under Pennsylvania Supreme Court jurisprudence, I observe that even characterizing a plaintiff's conduct as inadvertent will not suffice to comply with Lamp. In Farinacci, on the very last day for commencing a personal injury action permitted by the statute of limitations, the plaintiff filed a praecipe for writ of summons. Farinacci, 510 Pa. at 591, 511 A.2d at 758. However, "[t]hrough plaintiff's counsel's inadvertence, service of the writ could not be effected," id., before the writ and the statute of limitations had both expired.
 
 
 52
 In Farinacci, "inadvertence" consisted of two different forms of dereliction. First, while "eight or nine days of the delay was attributable to counsel's simply misplacing the file[,] [s]uch is not necessarily inconsistent with a finding of good faith." 510 Pa. at 594-95, 511 A.2d at 759-60 (emphasis added). The court went on to the second form of inadvertence, finding Lamp dispositive in barring the action. "The remaining four weeks' delay [until counsel remembered to pay the sheriff his fee] is attributable only to counsel's faulty memory." 510 Pa. at 595, 511 A.2d at 760. Thus, based on its analysis and interpretation of Lamp as applied to the Farinacci circumstance, the Farinacci court upheld the lower court's dismissal of the action.
 
 
 53
 I am satisfied that the delinquency or incompetence arguably manifested by the Pattersons' first attorney,[2] can be likened to the faulty memory of the Farinacci attorney. Accordingly, if in Farinacci a faulty memory establishes the absence of the requisite Lamp good-faith effort to effectuate service on a defendant, so too must the unexplained delinquency of the Pattersons' attorney who took no action to serve the defendant Bosch for a period of up to 18 months.
 
 II
 
 54
 The majority understandably relies on opinions of lower and intermediate Pennsylvania state courts, see, e.g., maj. op. at 389, 390-391, because other than Lamp and Farinacci, no Pennsylvania Supreme Court cases treat this subject. However, whatever the gloss put on Lamp and Farinacci by the lower state courts, those cases cannot bind us. See Gruber v. Owens-Illinois, Inc., 899 F.2d 1366, 1369-70 (3d Cir.1990) (Garth, J.); National Surety Corp. v. Midland Bank, 551 F.2d 21, 29-30 (3d Cir.1977) (Garth, J.). Rather, as a federal court sitting in diversity and seeking to interpret state law or predict a state law outcome, we are bound only by pronouncements from the highest court of the state. Id.
 
 
 55
 In both Lamp and Farinacci, the Pennsylvania Supreme Court has spoken to the matter at hand and has provided us not only with "persuasive" but with dispositive directions to guide our conclusion. Thus, while we may possibly be persuaded by the rationale of an inferior Pennsylvania court, we cannot look for dispositive guidance from the lower court cases on which the majority relies. See maj. op. at 389, 390-391.
 
 
 56
 Indeed, those cases, which for the most part are "all over the lot," provide no consistent interpretation of Lamp that can persuade me. For example, the majority calls particular attention to Beck v. Minestrella, 264 Pa.Super. 609, 401 A.2d 762 (1979), cited in maj. op. at 389, 391, in which the Pennsylvania Superior Court held that the plaintiffs' action was not time barred under Lamp, despite an initial lapse of one year and nine months between service attempts, followed by another lapse of three months before the plaintiffs again attempted and finally effected service. 264 Pa.Super. at 611-13, 401 A.2d at 763-64 (ruling that Lamp was inapplicable because "[a]t no time does the record indicate that [the plaintiff] did anything to impede the service of the various papers or engage in any conduct of any kind 'to stall in its tracks the legal machinery.' ").
 
 
 57
 On the other hand, some eight years later, a Pennsylvania trial court, in analyzing Lamp, barred a cause of action where the plaintiff had allowed an unexplained lapse of seven months between service attempts, followed by another unexplained lapse of five months after the reissuance of the writ of summons until the next service attempt. Petrosky v. Kawasaki Heavy Industries, 135 Pitt.Legal J. 268, 270-71 (1987) ("A course of conduct by a plaintiff which may stall legal machinery set in motion by him, consists, not only of affirmative conduct but also passive conduct, i.e., failing to do anything for an unreasonable period of time either after filing the original writ of summons or the reissuance thereof."), cited in maj. op. at 390, 391.
 
 
 58
 Nor are we given any additional enlightenment by the most recent Pennsylvania Superior Court case on this matter, Leidich v. Franklin, 394 Pa.Super. 302, 575 A.2d 914 (1990), cited in maj. op. at 389. That case did not involve a lengthy time lapse between service attempts. Rather, the court held that, despite the plaintiff's failure to follow local practice in serving the writ of summons,[3] she met the requirements of Lamp because her effort to serve the defendants, which resulted in service of the writ on them one day after the issuance of the writ, 394 Pa.Super. at ---, 575 A.2d at 915, constituted a good faith effort and, hence, she had not engaged in a course of conduct that could stall the judicial process. 394 Pa.Super. at ---, 575 A.2d at 920.[4] In so holding, the court focused on the fact that the defendant had not disputed receipt of the initial service, and that "[e]ven the initial stages of discovery ... were underway before being discontinued at the behest of the defendants' counsel." Id. Therefore, Leidich is clearly inapposite to the issue presented here as to whether a plaintiff has an ongoing obligation to make a good-faith effort to effect service rather than to allow the defendants to remain ignorant of the plaintiffs' action for a period of up to 18 months after an ineffectual attempt at service.
 
 
 59
 Thus, I am satisfied that it is the instruction of Lamp and Farinacci which must control our disposition, and I am willing, as are my colleagues, to leave any substantive refinements to the Pennsylvania Supreme Court as the proper body "to clean up its own act." However, until it does so, we are bound to follow the route that has been unambiguously laid out for us. That route, which is the Lamp/Farinacci route, leaves little room in applying the Lamp/Farinacci precepts for the detour taken by the majority of this panel.
 
 III
 
 60
 Within the context of the Lamp/Farinacci rule, Judge McCune properly exercised his discretion in ruling that the plaintiffs' conduct did not comply with their requirements. In Farinacci, the court held that "[i]n each case, where noncompliance with Lamp is alleged, the court must determine in its sound discretion whether a good faith effort to effectuate notice was made." Farinacci, 510 Pa. at 594, 511 A.2d at 759 (emphasis added). In applying this deferential standard of review, the court held further that:
 
 
 61
 [a]s plaintiffs have failed to provide an explanation for counsel's inadvertance which could substantiate a finding that plaintiffs made a good-faith effort to effectuate service of the writ, we are constrained to hold that the order of the Court of Common Pleas ... dismissing plaintiff's action was not an abuse of discretion, and was therefore proper.
 
 
 62
 510 Pa. at 595, 511 A.2d at 760.
 
 
 63
 Similarly, the plaintiffs here have advanced no explanation for the 17 to 18 month lapse between attempts at service. That their new counsel later managed to succeed in serving the defendants as quickly and easily as he did emphasizes their first counsel's inaction. It also confirms that the district court was well within its discretion in determining that such an hiatus in efforts to serve the defendants constituted a lack of good faith amounting to noncompliance with Lamp.[5] I would affirm Judge McCune's order of December 11, 1989, in which he entered judgment against the Pattersons and in favor of the defendants. Because the majority holds otherwise, I respectfully dissent.
 
 
 
 [1]
 The paralegal who prepared the service instructions stated in an affidavit that she believed that Corporation Trust Company of Philadelphia and C.T. Systems of Pittsburgh were the same entity
 
 
 [2]
 The plaintiffs assert that throughout this period they were unaware that their former attorney had not served the defendants. Appellants' Br. at 7
 
 
 [3]
 The attorney testified that he learned of American Bosch's address in a telephone conversation with the general counsel for United Technology
 
 
 [4]
 The complaint also raised claims for punitive damages and loss of consortium, which are derivative claims governed by the statutes of limitations of the source claims. See Hilbert v. Roth, 395 Pa. 270, 276, 149 A.2d 648, 652 (1959) ("The right to punitive damages is a mere incident to a cause of action ... and not the subject of an action in itself."); Hooten v. Pennsylvania College of Optometry, 601 F.Supp. 1151, 1155 (E.D.Pa.1984) (under Pennsylvania law, loss of consortium claim is dependent on injured spouse's right to recover)
 
 
 [5]
 Pa.R.Civ.P. 1007(2) and (3) provide that an action may also be commenced by the filing of a complaint or an agreement for an amicable action. Although Lamp dealt expressly with cases commenced by the filing of a praecipe for a writ of summons, "the rule applies with equal force to cases instituted by complaint." Pannill v. Seahorne, 278 Pa.Super. 562, 568, 420 A.2d 684, 687 (1980)
 
 
 [6]
 For a pre-Lamp discussion of Pennsylvania cases dealing with the "issue and hold" practice, see Brua v. Bruce-Merrilees Electric Co., 63 Pa.D. & C.2d 652 (C.P. Lawrence Co.1973)
 
 
 [7]
 Because the attorney might reasonably have read Peterson v. Philadelphia Suburban Transportation Co., 435 Pa. 232, 255 A.2d 577 (1969), as sanctioning his conduct, the Pennsylvania Supreme Court did not apply the rule in Lamp itself
 
 
 [8]
 "Non pros" (or non prosequitur) refers to a judgment for a defendant entered after a showing that the plaintiff has failed to prosecute the action with due diligence, that there is no compelling reason for the delay, and that the delay has prejudiced the defendant. James Brothers Co. v. Union Banking & Trust Co. of DuBois, 432 Pa. 129, 132, 247 A.2d 587-89 (1968); see generally Standard Pennsylvania Practice 2d 6639:67-76 (1982). The applicability of the non pros doctrine is not raised by this appeal
 
 
 [9]
 We respectfully disagree with Judge Garth's assertion that in Lamp and Farinacci the Pennsylvania Supreme Court "has spoken to the matter at hand ... with dispositive directions to guide our conclusion." (dis. op. at 394). Both cases dealt specifically with challenges to plaintiffs' initial service attempts, and we do not read the language in either decision as imposing an ongoing good-faith service obligation
 Although Judge Garth's interpretation of Lamp is plausible, we do not find the Supreme Court's language to be as unambiguous as our able colleague suggests. Because our interpretation of Pennsylvania law controls only those cases which are in federal court through the accident of diversity, we believe that it is the role of the Pennsylvania Supreme Court, and not this court, to resolve uncertainties about the scope of the Lamp holding. In this regard, we note that the Lamp Court itself applied its holding prospectively, in fairness to plaintiffs who might have reasonably relied on its prior caselaw as sanctioning the "issue and hold" practice. 469 Pa. at 478, 366 A.2d at 889.
 
 
 [10]
 In Petrosky, the plaintiffs filed a praecipe for a writ of summons on February 7, 1985, nearly one year before the expiration of the four-year statute of limitations governing their breach of warranty claim. After an unsuccessful attempt to serve the defendant at "C.T. Corp. Systems," the sheriff returned the writ on March 6, 1985. The writ was reissued on October 16, 1985, and the plaintiffs unsuccessfully attempted to serve the defendant in accordance with the procedures for service of process on foreign corporations. The plaintiffs finally served the defendant on June 30, 1986, as a result of service initiated on March 6, 1986, both of which dates were after the expiration of the statute of limitations. The trial court concluded that the delay in attempting service violated Lamp, stating:
 A course of conduct by a plaintiff which may stall legal machinery set in motion by him, consists, not only of affirmative conduct but also passive conduct, i.e., failing to do anything for an unreasonable period of time either after filing the original writ of summons or the reissuance thereof.
 
 
 [135]
 Pitt.Legal J. at 271
 
 
 [11]
 Because we hold that the action was timely commenced, we do not reach the plaintiffs' arguments that the defendants are equitably estopped from asserting the statute of limitations defense, that Corporation Trust Company is American Bosch's actual or "apparent" agent, or that the delay in serving defendants constituted "excusable neglect" on the part of plaintiffs' former counsel
 
 
 [1]
 Although the majority calls attention to the Pattersons' assertion that they were unaware of their attorney's deficient efforts to effect service of the writ, (maj. op. at 386 n. 2), that circumstance cannot absolve them from the consequences of their attorney's deficiency. Link v. Wabash Railroad, 370 U.S. 626, 633-34 & n. 10, 82 S.Ct. 1386, 1390-91 & n. 10, 8 L.Ed.2d 734 (1962). Rather, the Pattersons are "deemed bound by the acts of [their] lawyer-agent and [are] considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " Id. at 634, 82 S.Ct. at 1390 (citation omitted)
 
 
 [2]
 We are informed by the appellees' brief that the Pattersons are in the process of suing former counsel for malpractice
 
 
 [3]
 The plaintiff resorted to mail rather than to personal service. 394 Pa.Super. at ---, 575 A.2d at 915 & n. 3
 
 
 [4]
 Indeed, on the same day as the defendants were served, the writ was also served on the agent of the company insuring the defendants, by agreement of the agent and plaintiff's counsel, 394 Pa.Super. at ---, 575 A.2d at 915 n. 2, and the defendants were served with a notice to appear for depositions. Within approximately two months, the plaintiff began submitting documentation to the defendants' insurer with an eye toward settlement of her claim. 394 Pa.Super. at ---, 575 A.2d at 915
 
 
 [5]
 In this Circuit's case law, "good faith" is a factual determination. See, e.g., United States v. Tabor Court Realty Corp., 803 F.2d 1288, 1299, 1304 (3d Cir.1986); Perichak v. Int'l Union of Electrical Radio and Machine Workers, 715 F.2d 78, 79 (3d Cir.1983) (Garth, J.) (district court's finding of "bad faith" may be reversed only if clearly erroneous). Even under a clearly erroneous standard of review, however, Judge McCune's ruling must be affirmed