State of Vermont and/or Paul L. Munson, Sheriff of Addison County v. Glens Falls Insurance Company v. Lebanon Homes of New England, Inc., d/b/a Northeast Housing, Inc.

[404 A.2d 101]

No. 250-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 5, 1979

Motion for Reargument Denied June 21, 1979

*M. Jerome Diamond,* Attorney General, and *Thomas R. Viall,* Assistant Attorney General, Montpelier, for Plaintiff.

*Christopher A. Webber, Jr.,* of *Webber and Costello,* Rutland, for Glens Falls.

*Sullivan & McCaffrey,* Rutland, for Lebanon Homes.

Hill, J. The defendant, Glens Falls Insurance Company (Glens Falls), appeals from an order of the Washington Su-

perior Court obligating it to defend Addison County Sheriff Paul L. Munson and pay any judgment rendered against him in an action filed in Addison Superior Court by Lebanon Homes of New England, Inc., d/b/a Northeast Housing, Inc. (Lebanon of New England). We affirm.

The facts are undisputed. On or about July 19, 1972, Glens Falls issued a comprehensive general liability insurance policy to the State of Vermont and Vermont State Colleges, Inc., covering the period July 19, 1972, to July 19, 1975. The policy contains the following standard provisions:[1]

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> A. Bodily injury or
> B. Property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage. . . .
> Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Sheriff Munson is a named insured under the policy. On April 29, 1975, he received a letter from Champlain Security Systems, Inc., authorizing him to serve an alias writ of execution, running against Lebanon Homes, Inc. (Lebanon) and, pursuant to the writ, seize a mobile home en route to Burlington, Vermont.

When Sheriff Munson served the writ, the driver transporting the mobile home informed him that Lebanon was not its owner. The driver gave him the invoice and warranty card to the mobile home, and both contained the heading "Lebanon

---

[1] Such standard provisions "are the product of the combined efforts of the National Bureau of Casualty Underwriters, an organization of stock insurance carriers, and the Mutual Insurance Rating Bureau, a similar organization of mutual liability insurance carriers." Hall, *Contractors' Liability Insurance For Property Damage Incidental to Normal Operations—The Standard Coverage Problem,* 16 Kan. L. Rev. 181 (1968).

Homes of New England, Inc." and the logo "Lebanon Homes, Inc." Despite the driver's protests, Sheriff Munson seized the mobile home and sold it at a sheriff's sale on June 6, 1975. Approximately one month prior to that sale, however, he received a letter from an attorney for Lebanon of New England advising the sheriff that his client owned the mobile home and was demanding its return.

After the sale, Lebanon of New England sued Sheriff Munson for conversion. In addition, its complaint alleges that his acts "constituted willful and intentional conduct so as to entitle Plaintiff to punitive damages."

The State of Vermont called on Glens Falls to defend Sheriff Munson under the general liability policy set forth above. When the insurer refused, the State commenced this action for a declaratory judgment. In its amended answer, Glens Falls requested a ruling from the trial court that if it was bound to defend it was not obligated to pay any portion of a judgment that represents punitive damages.

The trial court found that Sheriff Munson did not intend to levy on property of Lebanon of New England, and that at no time did Sheriff Munson intend to harm or damage it. These findings were based on the uncontradicted testimony of Sheriff Munson, who stated that such was not his intent at the time of the levy and execution sale. The court held that the loss to Lebanon of New England was the "unintentional result of an intentional act" and constituted an "occurrence" as defined in the policy. The trial court also rejected the insurer's claim that the policy did not obligate them to pay any portion of a judgment representing punitive damages, holding that "the terms 'all sums' and 'damages' must be read to include compensatory and exemplary damages."

The defendant first contends that the trial court erred in ruling that the damage to Lebanon of New England was caused by an "occurrence." It argues that because Sheriff Munson had definite knowledge of Lebanon of New England's claim to ownership, he must be taken to have expected or intended the resulting damage. We disagree.

■ Under the policy an occurrence requires: (1) An accident; (2) resulting in property damage; (3) neither expected nor intended from the standpoint of the insured. *Bituminous Casualty Corp.* v. *Bartlett,* 307 Minn. 72, 76–77, 240 N.W.2d 310, 312 (1976). The defendant does not dispute that there was an accident resulting in property damage but focuses on the third element which, in our judgment, is designed to exclude only highly probable or intentionally caused damage.

> The term "expected" when used in association with "intended" carries the connotation of a high degree of certainty or probability and seems to be used to practically equate with "intended," because one expects the consequences of what one intends. It does not seem to us designed to substantially enlarge the exclusion.

*State Farm Fire & Casualty Co.* v. *Muth,* 190 Neb. 248, 252, 207 N.W.2d 364, 366 (1973) (citation omitted); see *Ambassador Insurance Co.* v. *Montes,* 147 N.J. Super. 286, 292–93, 371 A.2d 292, 295–96 (App. Div. 1977).[2]

■ The insurer argues that, in coverage questions such as this, a determination of intent requires an objective rather than subjective test and that it was improper for the trial court to rely on Sheriff Munson's testimony concerning his intent. We agree that where the circumstances indicate the insured knew his act would damage the injured party he must be taken to have intended it despite subjective testimony to the contrary. In equivocal circumstances, however, subjective testimony may be relied on by the trier of fact. For example, in *Otterman* v. *Union Mutual Fire Insurance Co.,* 130 Vt. 636, 298 A.2d 547 (1972), where this Court construed a definition of occurrence not materially different from the one

---

[2] Indeed, it has been argued that liability policies covering damage "caused by an occurrence" suggest no limitation other than the public policy against recovery for intentionally caused damage, that "the [insurance] industry has indicated that this is the only limitation intended" and, at a minimum, "the courts should hold insurers to the underwriters' intentions of the meaning of [standardized] policy language." Hall, *supra* note 1, at 203–04.

involved here,[3] subjective evidence was held to support the trial court's finding that the insured did not intend to cause injury when in an enraged state he discharged a revolver inside a darkened house, and the bullet passed through a wall and struck a police officer. *Id.* at 641, 298 A.2d at 550. The Court noted that "[n]either the findings, nor the evidence . . . indicate in any way that the insured . . . had any intention to cause injury to [the officer]," and "[t]here was no evidence that [he] even knew that [the officer] was in the darkened building." *Id.* at 642, 298 A.2d at 551.

In this case there is no showing that Sheriff Munson knew the mobile home belonged to Lebanon of New England. Although he was notified of their claim, he was not presented with any proof of ownership other than the documents he obtained from the driver. Those documents supported his honest but mistaken belief that the mobile home belonged to Lebanon Homes, Inc. That Lebanon Homes, Inc. and Lebanon Homes of New England, Inc., d/b/a Northeast Housing turned out to be separate and independent corporations does not convert his mistake into an intentional act. In these circumstances the trial court was entitled to rely on the sheriff's testimony to support its finding that he did not intend to cause damage to Lebanon of New England.

The defendant also contends that the trial court erred in concluding that it is obligated to pay any portion of a judgment representing punitive damages. The insurer's argument is two-fold. First, it argues that properly construed the policy does not cover punitive damages, and second, if the policy language appears to afford such coverage, compelling reasons

---

[3] Prior to October 1, 1966, the general liability policy provided coverage for bodily injury or property damage caused by "accident." Fish, *An Overview of the 1973 Comprehensive General Liability Insurance Policy and Products Liability Coverage*, 34 Mo. Bar J. 257, 258 (1978); Gowan, *Provisions of Automobile and Liability Insurance Contracts*, 30 Ins. Counsel J. 96, 101 (1963); Hall, *supra* note 1. On that date the industry shifted "from an 'accident' basis of coverage to an 'occurrence' basis of coverage." Tarpey, *The New Comprehensive Policy: Some of the Changes*, 33 Ins. Counsel J. 223 (1966). The 1966 definition of occurrence, which was at issue in the *Otterman* case, differs only slightly—and in a respect not relevant here—from the 1973 definition involved here. See Fish, *supra*, at 258–59.

of public policy require it be denied. We reject both of these claims.

██ Under the policy the insurer agreed to pay "all sums which the insured shall become legally obligated to pay as damages." The language "all sums as damages" means the whole amount due a plaintiff as damages pursuant to a legal judgment or settlement regardless of how characterized. We need not repeat the insurer's elaborate attempt to convince us otherwise because it overlooks the cardinal rule of construction that disputed contract language, if clear and unambiguous, must be given force and effect in its plain, ordinary, and popular sense. *Utica Mutual Insurance Co.* v. *Central Vermont Railway*, 133 Vt. 292, 294, 336 A.2d 200, 202 (1975); *Noyes* v. *Order of United Commercial Travelers of America*, 125 Vt. 336, 339, 215 A.2d 495, 497 (1965). The insurer drafts the contract and can easily include exclusions for punitive damages, or can bargain a higher premium. Where it does neither and uses the language involved here, coverage ought to be had. See generally Conley & Bishop, *Punitive Damages and the General Liability Policy*, 25 Fed'n. Ins. Counsel Q. 309 (1975); see also *Pennsylvania Threshermen & Framers' Mutual Casualty Insurance Co.* v. *Thornton*, 244 F.2d 823, 827 (4th Cir. 1957); *General Casualty Co. of America* v. *Woodby*, 238 F.2d 452, 457–58 (6th Cir. 1956); *Concord General Mutual Insurance Co.* v. *Hills*, 345 F. Supp. 1090, 1095 (D. Me. 1972).

██ Nor are we persuaded that public policy considerations preclude enforcement of this contract provision. The defendant argues that the purpose of punitive damages is to discourage certain types of outrageous behavior and that to allow the wrongdoer to pass on his punishment to an insurance carrier would completely thwart this purpose. See *Northwestern National Casualty Co.* v. *McNulty*, 307 F.2d 432 (5th Cir. 1962).

While this argument has superficial appeal, it will not bear scrutiny. First, insurance policies have monetary limits. To the extent an award of damages exceeds the policy limit the deterrent effect of punitive damages is preserved. Second, if an insured has punitive damages awarded against him, his insurance premiums are likely to reflect the fact. Third, we

have found no solid evidence that the denial of coverage for punitive damages has any significant impact in the jurisdictions so holding. See *Price* v. *Hartford Accident & Indemnity Co.*, 108 Ariz. 485, 487, 502 P.2d 522, 524 (1972); *Lazenby* v. *Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964). Fourth, we find no public policy in Vermont against coverage of punitive damages. Vermont law requires that liability insurance policies contain, in substance, the following:

> The company shall pay and satisfy *any* judgment that may be recovered against the insured upon any claim covered by this policy to the extent and within the limits of liability assumed thereby . . . .

8 V.S.A. § 4203 (emphasis added). We find in this statute a legislative declaration of a public policy favoring complete coverage. In these circumstances we decline to unsettle the insured's reasonable expectation that "all sums" means "all sums." See *Fish* v. *Nationwide Mutual Insurance Co.*, 126 Vt. 487, 492, 236 A.2d 648, 651 (1967).

*Affirmed.*