## American Protection Insurance Co. v. Kenneth McMahan, et. al.

[562 A.2d 462]

No. 87-579

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 5, 1989

*Richard H. Wadhams* and *Michael J. Gannon* of *Pierson, Affolter & Wadhams*, Burlington, for Plaintiff-Appellee.

*Robert A. Mello*, South Burlington, for Defendants-Appellants.

**Morse, J.** The issue on appeal involves the coverage provided by a homeowner's policy for risks attendant formaldehyde insulation in a home. The trial court declared that the insurance policy did not provide coverage. We reverse.

## I.

### Background

In 1984, defendants McMahan sold to defendants Livak a residential dwelling in Huntington Center, Vermont, which had previously been insulated with urea formaldehyde foam insulation.[1] By complaint in October 1985, the Livaks sued the McMahans on three counts — misrepresentation, fraudulent concealment, and strict products liability — alleging that the formaldehyde insulation was a noxious material abnormally dangerous to the health of occupants. The complaint stated the health risks to include "cancer, acute illness such as eye, nose and throat irritation and sensitization."[2] The Livaks asked for damages for the diminution in the fair market value of the dwelling, for their injury from exposure to formaldehyde gas, and for the emotional trauma and

---

[1] This product is defined by the federal Consumer Product Safety Commission as "any cellular, plastic thermal insulation material which contains as a component chemical, formaldehyde, formaldehyde polymers, formaldehyde derivatives, or any other chemical from which formaldehyde can be released." 16 C.F.R. § 1306.2(b) (1982). The material is manufactured by mixing a liquid resin containing formaldehyde with a foaming agent and compressed air. The resulting mixture is pumped through the holes cut into the walls of the building being insulated, where it solidifies. For a few years, the material emits formaldehyde gas into the building. See *Gulf South Insulation* v. *United States Consumer Product Safety Commission*, 701 F.2d 1137, 1140 (5th Cir. 1983); Note, *Urea Formaldehyde Foam Insulation: Defusing a Timebomb*, 11 Am. J.L. & Med. 81, 82-83 (1985).

[2] See Note, *supra* note 1, at 84-88 (discussing health risks associated with formaldehyde).

distress associated with being exposed to the health risks. Punitive damages were also sought. [3]

The McMahans' carrier, American Protection Insurance Company (American), was duly notified of the claim but ultimately declined to defend and indemnify them in the Livak suit. This action was subsequently brought to declare the rights of the parties.

The homeowner's policy in issue covers the insured for:

> a claim . . . made or a suit . . . brought against any **insured** for damages because of **bodily injury** or **property damages** to which this coverage applies.

"Bodily injury" is defined, insofar as relevant here, as "bodily harm, sickness or disease." "Property damage" is defined as "physical injury to or destruction of tangible property, including loss of use of this property."

Both parties filed motions for summary judgment. On November 3, 1987, the Chittenden Superior Court ruled that the underlying claims asserted by the Livaks did not come within the scope of the policy's coverage because they did not amount to claims of "bodily injury" or "property damage," the two triggers for coverage under the policy.[4]

## II.

### Discussion

Insurance contracts are construed according to their terms and "the evident intent of the parties as gathered from the language used." *Utica Mutual Insurance Co.* v. *Central Vermont Railway*, 133 Vt. 292, 295, 336 A.2d 200, 203(1975). "[T]he cardinal rule of construction promotes a reading of the phrase at issue in its plain, ordinary, and popular sense." *Id.* at 294, 336 A.2d at 202. When the language is ambiguous, the ambiguity is resolved in favor of the insured party. *Id.* at 295, 336 A.2d at 202. "The contract is to be strictly construed against the insurer . . . ." *Simp-*

---

[3] *Livak* v. *McMahan*, Chittenden Superior Court, No. S1110-85CnC.

[4] In addition to their claim that American has a duty to defend them under the terms of the insurance contract, the McMahans also assert that American — by certain letters written to the McMahans — waived its right to deny coverage. Because we hold that American is obligated in any event to defend and indemnify the McMahans, we do not reach the waiver claim.

son v. *State Mutual Life Assurance Co. of America,* 135 Vt. 554, 556, 382 A.2d 198, 199 (1977); see also *City of Barre* v. *New Hampshire Insurance Co.,* 136 Vt. 484, 486, 396 A.2d 121, 122 (1978) ("[T]erms susceptible to two different interpretations should, absent other considerations, be construed in favor of the insured."); *Valente* v. *Commercial Ins. Co.,* 126 Vt. 455, 459, 236 A.2d 241, 243 (1967).

The definition of "bodily injury" as "bodily harm, sickness or disease" is insufficiently specific on its face to determine whether exposure to the toxic gas released from the insulation and consequent emotional distress are intended to be covered by the policy. Specifically, the definition does not tell us whether the harm must be outwardly manifested or whether it may remain undetected for a time. We construe the ambiguity, as we must, in the insured's favor, and hold that American must provide a defense against the underlying claims for damages from exposure to formaldehyde gas and associated psychological harm, and indemnify the McMahans under the insurance contract should they be found liable on counts I and III of the Livak complaint.

## A. *Exposure*

While the Livaks do not yet claim to suffer from any of the specific outwardly manifested harmful effects — some of which may occur only after long latency periods — allegedly caused by exposure to formaldehyde gas, they do claim exposure to the "health risks" of the gas. See *Pearl* v. *Allied Corp.,* 566 F. Supp. 400, 403-04 (E.D. Pa. 1983) (exposure to formaldehyde sufficient to state a claim for damages where plaintiffs failed to allege any presently detectable injury or malady). The argument that "bodily injury" occurs at the time of exposure is premised on the claim of fact that tissue damage or irritation occurs nearly contemporaneously with exposure to the gas. Cf. *Insurance Co. of North America* v. *Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1218 (6th Cir. 1980) ("Injury, in the sense that there is tissue damage, occurs shortly after the initial inhalation of asbestos fibers."), *clarified,* 657 F.2d 814, *cert. denied,* 454 U.S. 1109 (1981). We of course state no view on the validity of this factual claim with respect to urea formaldehyde. We also express no opinion on whether exposure alone gives rise to a cause of action because that issue is not before us. All we conclude is that such exposure,

as alleged in the Livak complaint, is covered by the definition of "bodily injury" in the homeowner's policy.

The term "bodily injury" in insurance contracts has been held to include mere exposure to toxins. Noting "the unique character of the problem created by [insurance] policy language in the context of diseases with long latency periods," the Third Circuit recently held that exposure to asbestos in insulation products was sufficient to constitute "bodily injury."[5] *ACandS, Inc.* v. *Aetna Casualty & Surety Co.,* 764 F.2d 968, 973 (3d Cir. 1985). The court rejected the argument that the manifestation of disease is the sole trigger of coverage under the policies. See also *Keene Corp.* v. *Insurance Company of North America,* 667 F.2d 1034, 1046 (D.C. Cir. 1981) ("To accept the argument that *only* manifestation triggers coverage—and allow insurers to terminate coverage prior to the manifestation of many cases of disease—would deprive [insured] of the protection it purchased when it entered into the insurance contracts.") (emphasis in original), *cert. denied,* 455 U.S. 1007 (1982); *Porter* v. *American Optical Corp.,* 641 F.2d 1128, 1145 (5th Cir.) (exposure is "bodily injury" under insurance contract), *cert. denied,* 454 U.S. 1109 (1981); *Insurance Co. of North America* v. *Forty-Eight Insulations, Inc.,* 633 F.2d at 1219.

The trial court sought to distinguish the *ACandS* case: "Exposure to asbestos has well-known serious health risks, . . . while the same cannot be said of exposure to urea formaldehyde." For the latter proposition, the trial court cited *Gulf South Insulation* v. *United States Consumer Product Safety Commission,* 701 F.2d 1137 (5th Cir. 1983). But that case involved a different issue. *Gulf South* reviewed a Consumer Product Safety Commission ruling banning urea formaldehyde insulation in residences and schools. The court found that the "record developed before the agency does not contain the substantial evidence necessary to support the Commission's ban." *Id.* at 1140.[6] In the instant proceeding, however, we do not require a finding that urea formaldehyde in-

---

[5] "Bodily injury" was defined in the relevant policy in substantially the same terms as in the policy at issue in the instant case.

[6] Under 15 U.S.C. § 2060(c), consumer product safety rules shall not be upheld on review "unless the Commission's findings . . . are supported by substantial evidence on the record taken as a whole." The pertinent finding is that the product that will be subject to the rule poses an unreasonable risk of injury. 15 U.S.C. § 2058(f)(3)(A). See *Gulf South Insulation,* 701 F.2d at 1142.

sulation poses an unreasonable risk of injury, nor do we require that the record demonstrate "substantial evidence" for such a finding. These are questions bearing on liability, not on American's duty to defend claims brought against its policyholders.

The trial court's conclusion that formaldehyde insulation does not pose an unreasonable risk of injury may be true;[7] if so, that proposition will surely be advanced in subsequent proceedings. It is not relevant to the matter before us, however. As the trial court itself correctly stated: "An insurer's duty to defend an action against an insured is measured by the allegations set forth in the complainant's pleadings." See *Town of South Burlington* v. *American Fidelity Co.,* 125 Vt. 348, 349-50, 215 A.2d 508, 510 (1965) (in deciding whether insurer has duty to defend personal injury claim, "actual facts of the accident episode were not yet relevant"; issue must be resolved from "the language of the policy and the language of the complaint"). *Commercial Insurance Co.* v. *Papandrea,* 121 Vt. 386, 390, 159 A.2d 333, 335 (1960) ("duty of the insurance carrier to defend a claim is measured by the allegations upon which the claim is stated"), and cases cited. Furthermore, "[t]he duty of an insurer to enter and defend a case on behalf of its insured is broader than its obligation to respond in damages." *State* v. *Glens Falls Insurance Co.,* 132 Vt. 97, 99, 315 A.2d 257, 258 (1974).

The Livaks allege that they have suffered serious increased health risks from exposure to urea formaldehyde; the allegation is no different except in its particulars from the underlying claims in *ACandS*. See 764 F.2d at 970. The allegation is sufficient to trigger coverage under the policy.

## B. *Emotional Distress*

The McMahans' policy covers claims made for damages "because of bodily injury." The Livaks allege that they have suffered emotional distress as a result of exposure to formaldehyde gas. We held above that "bodily injury" includes exposure to a toxic product. It follows that American is under a duty to defend and

---

[7] Assuming, on the other hand, that formaldehyde insulation does pose an unreasonable risk of injury, American's position poses an ironic twist. If the Livaks continue to allow themselves to be exposed to the product and get sick, the McMahans are covered. If the Livaks remove the product from their home, avoiding the risk, and do not get sick, the McMahans are not covered!

indemnify the McMahans for any damages incurred *because of* exposure to such product. This duty includes the emotional distress damages claimed by the Livaks.

As said before, the issue here is not what the Livaks are entitled to recover. That will be decided in the Livak suit. All we hold is that if emotional distress damages are permitted, see *Vaillancourt* v. *Medical Center Hospital of Vermont, Inc.,* 139 Vt. 138, 143, 425 A.2d 92, 95 (1980), they must be covered under the policy. If such damages are not recoverable, it is because the law does not permit it, not because the policy under consideration here does not cover them.

## C. *Diminution in Property Value*

The Livaks' complaint alleged that formaldehyde insulation, "by virtue of the health hazard it presents, radically diminished the fair market value of their house." The trial court held that this claim was not covered by the McMahans' homeowner's policy. We do not agree.

The policy covers the insured for claims brought against them for "property damages." As noted above, that term is defined as "physical injury to or destruction of tangible property, including loss of use of this property." The Livaks' claim essentially is that the presence of toxic material in the walls of their house constitutes "destruction of tangible property." They claim to have lost much of the beneficial use of the property — they can no longer live there without injury, and the property's resale value is diminished.[8] If the Livaks can prove that the insulation damaged the house, it follows that consequential damages as allowed by law are covered by the policy. Again, we express no opinion on the merits of the Livaks' property damage claim.

## D. *Punitive Damages*

■ The parties also have briefed, although in most cursory fashion, the issue of punitive damages. To repeat a recurrent theme, the question before us is not whether punitive damages

---

[8] By comparison, had a structural defect in the wall caused it to fall and injure the Livaks due to the McMahans' liability, American would be obligated under the insurance contract to cover claims for both bodily injury and property damage (diminution in property value or cost of repair). See *Bean* v. *Sears, Roebuck & Co.,* 129 Vt. 278, 282, 276 A.2d 613, 616 (1971).

may be awarded to the Livaks; the question is what the policy covers. The policy promises to pay all damages "for which the insured is legally liable." There is no exclusion for claims of punitive damages. See *State* v. *Glens Falls Insurance Co.*, 137 Vt. 313, 319, 404 A.2d 101, 105 (1979) (punitive damages covered where insurer agreed to pay "all sums which the insured shall become legally obligated to pay as damages"). Thus, such damages generally are within the coverage.

There is, however, a clause in the policy expressly excluding coverage for damages caused by intentional acts. Therefore, any damages incurred by the McMahans for liability sounding in fraudulent concealment or intentional misrepresentation (Count II of the Livak complaint) would not be covered by the insurance policy.

### E. *Costs and Attorney Fees*

The McMahans argue that they are entitled to an award of the costs, including attorney fees, incurred in the instant proceeding. We remand to the trial court to determine the availability of costs and attorney fees, if any, and their amount.

*Reversed and remanded.*

**Peck, J.**, dissents without opinion.