**WOODSTOCK RESORT CORPORATION,**
**Plaintiff,**

v.

**SCOTTSDALE INSURANCE**
**COMPANY, Defendant.**

No. 2:95–cv–148.

United States District Court,
D. Vermont.

May 16, 1996.

---

See also, 921 F.Supp. 1202.

**151**

John Paul Faignant, Miller & Faignant, P.C., Rutland, VT, for plaintiff.

Karen McAndrew, Dinse, Erdmann, Knapp & McAndrew, Burlington, VT, for defendant.

OPINION AND ORDER

SESSIONS, District Judge.

In this declaratory judgment action, Woodstock Resort Corporation ("Woodstock") has asked this Court to declare that Scottsdale Insurance Company ("Scottsdale") has a duty to defend it against a suit for wrongful termination by a former employee under the terms of a policy of insurance issued by Scottsdale to Woodstock. Both parties have moved for summary judgment. For the reasons set forth below, Scottsdale's Motion for Summary Judgment (paper 2) is GRANTED, and Woodstock's Motion for Summary Judgment (paper 15) is DENIED.

I. BACKGROUND

In considering these cross-motions for summary judgment, the Court relies upon the following facts which are not in dispute.[1] Familiarity with the facts set forth in the

1. Pursuant to Local Rule No. 5(c)(1), Scottsdale filed a statement of undisputed material facts (paper 17). Because Woodstock did not file a statement of disputed facts pursuant to Local Rule No. 5(c)(1)(A), the facts included in Scottsdale's statement are deemed to be admitted. Local Rule No. 5(c)(1)(B).

Court's previous opinion is assumed. *Woodstock Resort Corp. v. Scottsdale Insurance Co.*, 921 F.Supp. 1202 (D.Vt.1995).

Woodstock's former employee, David Clement, alleged that the terms of his employment were governed by a personnel manual and employee handbook which established a contract of employment between the parties. He claimed that he was summarily discharged, without cause and in violation of the corporation's personnel rules, and in breach of his contract of employment.

According to Clement's complaint, some sixteen months after he began to work full time for Woodstock his supervisors and other employees "began hassling" him about his work. He experienced "considerable pressure and stress." In a private note, Clement expressed his frustration with the situation in strong terms. He discarded the note in the trash, where it was retrieved by an employee and delivered to Clement's supervisor. The supervisor suspended Clement without pay; while Clement was under suspension he was summarily fired, for "insubordination."

Clement's first cause of action, breach of contract, alleged damages in the form of lost wages, tips, benefits, and raises. His second cause of action, for exemplary damages, alleged that the corporation's conduct amounted to an egregious, unreasonable, arbitrary, and ruthless violation of Clement's rights under the terms of his employment contract, engendered out of malice toward Clement.

His third cause of action, intentional infliction of emotional distress, alleged that the corporation engaged in this conduct deliberately and intentionally in order to cause Clement severe emotional distress, and with knowledge that he had suffered previous distress as a result of oppressive work requirements. The corporation was alleged to have conducted itself with wanton and reckless disregard of the consequences to Clement. The conduct was asserted to be extreme and outrageous, and as a result caused Clement to "become emotionally upset, distressed, and aggravated."

Clement's fourth cause of action, violation of public policy, alleged that Vermont's public policy warranting good faith and fair dealing in commercial matters forbids retaliation by employers, and protects employees from being fired contrary to the terms of their employment contracts.

The comprehensive general liability policy under which Woodstock seeks coverage is a so-called occurrence policy, which provides:

The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of

A. BODILY INJURY or

B. PROPERTY DAMAGE

to which this insurance applies, caused by an OCCURRENCE, and the Company shall have the right and duty to defend any suit against the INSURED seeking damages on account of such BODILY INJURY or PROPERTY DAMAGE, even if any of the allegations of such suit are groundless, false or fraudulent ...

The policy defines occurrence as follows:

"OCCURRENCE" means an accident, including continuous or repeated exposure to conditions, which results in BODILY INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED.

The policy defines bodily injury as follows:

"BODILY INJURY" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

The policy also contains the following exclusions:

This insurance does not apply:

(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract.

## II.  DISCUSSION

Summary judgment should be rendered for a moving party if the court finds that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact.  *Id.,* at 325, 106 S.Ct. at 2553.  All justifiable inferences are to be drawn in favor of the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law as to all substantive issues.  *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Woodstock urges the Court to hold broadly that there is a duty to defend claims of intentional infliction of emotional distress under a comprehensive general liability policy. Scottsdale urges the Court to hold broadly that the termination of an employee by an employer is not and cannot be an accident as defined in the policy.

The Court is mindful of the Vermont Supreme Court's admonition in the context of an insurance coverage dispute:

Rules and categories are tempting devices for arriving at automatic answers.  Sometimes the distinguishing qualities of the classifications coincide with the essential differences between situations.  And sometimes they do not.  Sometimes the categories carry with them characteristics of their own which introduce deceptive or irrelevant distinctions into a decision, leading us away from the substance of an inquiry.

It is, therefore usually best for courts to meet the issues completely on a case by case basis, leaving classification to others, limiting the use of general propositions to those that are essential to an understanding of the manner in which the court resolved the questions involved, and the way it will approach others like it.  This is the genius of our common law system, deriving the general rule from the specific case.

*American Fidelity Co. v. North British & Mercantile Ins. Co.,* 124 Vt. 271, 272–73, 204 A.2d 110 (1964).  On the facts presented in this case, the Court finds no duty to defend.

An insurance company's duty to defend is determined by comparing the allegations in the underlying claim against the insured to the terms of coverage contained in the policy.  *Cooperative Fire Insurance Ass'n. v. Gray,* 157 Vt. 380, 599 A.2d 360 (1991).  Occasionally Vermont courts will examine the known facts on which the underlying claim is based in order to understand the application of policy provisions.  *Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 366, 610 A.2d 132 (1992).

The insurer's duty to defend is broader than its duty to indemnify.  *City of Burlington v. National Union Fire Ins. Co.,* 163 Vt. 124, 655 A.2d 719 (1994).  An insurer has a duty to defend if any claim against the insured potentially comes within the policy's coverage.  *Garneau,* 158 Vt. at 366, 610 A.2d 132.  Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend.  *Id.* at 366–67, 610 A.2d 132.

An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language.  *City of Burlington v. National Union,* 655 A.2d at 721.  Disputed terms will be construed according to their "plain, ordinary, and popular sense," but any ambiguity in the contract will be resolved in favor of the insured.  *American Protection Ins. Co. v. McMahan,* 151 Vt. 520, 522, 562 A.2d 462 (1989).

The Clement complaint alleged four causes of action:  breach of a contract of employment, exemplary damages, intentional infliction of emotional distress, and violation of public policy.  The parties agree that the only count which could trigger coverage un-

der the policy is the count for intentional infliction of emotional distress.

At issue therefore is whether wrongful termination from employment based on the facts alleged in the complaint can constitute an "occurrence" under the terms of the policy, and if so, whether emotional distress can constitute "bodily injury" under the policy. If both these questions are answered in the affirmative, then the final issue is whether either of the policy exclusions apply.

According to the policy language, an "occurrence" requires an accident. "Accident" has been defined in Vermont law as "an unexpected happening without intention and design." *Commercial Union Ins. Co. v. City of Montpelier*, 134 Vt. 184, 186, 353 A.2d 344 (1976).

The Vermont Supreme Court has recently had occasion to construe identical occurrence policy language in *City of Burlington v. National Union*, 655 A.2d at 720. In that case, the insured, City of Burlington, claimed that National Union had a duty to defend it under the provisions of an occurrence-based liability policy against an underlying suit for breach of contract and related torts. The suit arose out of the operation of an electric generation plant owned by the Burlington Electric Department. The plant was fueled by wood chips supplied by the plaintiffs, who claimed that Burlington refused to buy the quantity of wood chips for which it had contracted. The plaintiffs alleged tort as well as contract damages, and claimed bodily injuries including severe emotional distress. *Id.*

The Vermont Supreme Court examined the counts contained in the complaint to ascertain whether an "occurrence" had been alleged. It concluded that the complaint failed to allege an "accident," an essential component of an occurrence under the policy at issue. Although Burlington argued that it neither expected nor intended the harm alleged in the complaint, the Court found that Burlington intended or expected economic injury to the wood chip suppliers when it reduced its purchases from them. *Id.* at 722.

*City of Burlington v. National Union* distinguished cases involving intentional acts where the insured intended no injury to the party bringing the claim. *See e.g., Village of Morrisville Water & Light Dep't. v. United States Fidelity & Guar. Co.*, 775 F.Supp. 718 (D.Vt.1991); *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 404 A.2d 101 (1979); *Otterman v. Union Mutual Fire Ins. Co.*, 130 Vt. 636, 298 A.2d 547 (1972). The Vermont Supreme Court reasoned that Burlington intended or expected injury to the wood chip suppliers when it refused to buy the wood chips. *See also Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, —— Vt. ——, 674 A.2d 798 (1996) (no duty to defend suit for breach of contract and tort claims arising out of company's hiring of competitor's sales manager because conduct was not accidental).

To the extent that Clement claimed that Woodstock acted out of malice, that it deliberately and intentionally fired him in order to cause him severe emotional distress, with knowledge that he had previously suffered distress and that his distress would therefore increase, the complaint cannot be construed to allege an accident. There is no duty to defend complaints of intentional infliction of injury under the terms of the policy.

The reckless infliction of bodily injury, however, may constitute an accident, and therefore an occurrence, triggering a duty to defend, if the resultant bodily injury was neither expected nor intended from the standpoint of the insured. *Commercial Union*, 134 Vt. at 186, 353 A.2d 344. Woodstock submitted an affidavit from its president contending that at the time he decided to fire Clement, he "did not intend to cause any harm or the result that he alleged in his suit against the Woodstock Resort Corporation."

Count three of Clement's complaint alleged intentional infliction of emotional distress. The elements of the tort of intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) done intentionally or recklessly; 3) resulting in severe emotional distress. *Thayer v. Herdt*, 155 Vt. 448, 455, 586 A.2d 1122 (1990). *See also Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441 (1990). In the context of termination of employment, "if the manner of termination evinces circumstances

of oppressive conduct and abuse of a position of authority ... it may provide grounds for the tort action." *Id.*

■ In addition to claiming that Woodstock's conduct was intended to cause him emotional distress, Clement asserted that Woodstock conducted itself with reckless disregard of the probability of causing him emotional distress. Clement Complaint ¶ 46. Scottsdale would have a duty to defend if the alleged outrageous conduct was done with reckless disregard, and Woodstock neither expected nor intended the resultant injury asserted in the complaint. *See City of Burlington v. National Union,* 655 A.2d at 721–22; *Espinet v. Horvath,* 157 Vt. 257, 597 A.2d 307 (1991); *Village of Morrisville Water & Light,* 775 F.Supp. at 729–30; *State v. Glens Falls,* 137 Vt. at 317, 404 A.2d 101; *Otterman,* 130 Vt. at 642, 298 A.2d 547.

■ Clement asserted that he "experienced considerable pressure and stress," and that he had "become emotionally upset, distressed, and aggravated." Clement Complaint ¶ 22, 48. These are consequences that would reasonably be expected to flow from the discharge of an employee. Where circumstances indicate the insured knew his act would damage the injured party he must be taken to have intended it despite subjective testimony to the contrary. *State v. Glens Falls,* 137 Vt. at 317, 404 A.2d 101. *See also Espinet,* 157 Vt. at 259, 597 A.2d 307. Notwithstanding its assertion to the contrary, Woodstock could be reasonably certain that firing Clement would upset, distress and aggravate him.

Woodstock has cited this Court to *Wise Ins. Brokers, Inc. v. Great American Ins. Co.,* No. 92–349 (D.Vt. July 29, 1993), a decision of this district in which the court found a duty to defend a claim of intentional infliction of emotional distress resulting from wrongful termination from employment. The *Wise* decision does not disclose the underlying facts alleged in the complaint concerning the conduct of the employer or the harm suffered by the employee. Consequently this Court has no basis to judge whether the facts and circumstances in *Wise* are similar to the case at bar. Moreover, *Wise* was decided without the benefit of the Vermont Supreme Court's recent decision in *City of Burlington v. National Union,* in which the Court examined the facts alleged in the complaint and concluded that the insured intended injury because of the nature of the action taken, despite its assertion to the contrary.

Because on the facts asserted in the Clement complaint the injury was neither unexpected nor unintended, the claim fails to meet the definition of an occurrence under the terms of the policy. There is no duty to defend.[2]

■ Clement's complaint is also devoid of facts which would support a finding that Woodstock's conduct was outrageous, or that Clement suffered extreme emotional distress, to trigger any possibility of coverage. Clement's complaint asserted the following facts in support of his emotional distress claim. At the time he was fired he had worked full-time for Woodstock for less than two years. His supervisors had become dissatisfied with his work and "hassled" him. After reading Clement's private note about his conditions of employment, a supervisor immediately suspended Clement for three days without pay. Two days later he was summarily discharged. Clement's supervisors knew at the time of his termination that he was in distress as a result of his work load. Clement was given no opportunity to explain or correct his behavior. Clement had been led to expect that he would receive a warning or an

2. Woodstock also referred this Court to *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.,* 594 A.2d 1079 (Me.1991), in which the Supreme Judicial Court of Maine found a duty to defend on similar facts and contract language. *Maine Bonding's* holding rested largely on whether the plaintiff could establish "bodily injury" as a result of emotional distress caused by a retaliatory discharge. Although the opinion also discussed policy exclusions for bodily injury which is expected or intended by the insured, the Maine courts employ a different standard from that adopted by the Vermont Supreme Court. *Compare Maine Bonding,* 594 A.2d at 1081–82 (duty to defend unless tortfeasor subjectively wanted injury or subjectively foresaw injury as the practically certain result of its conduct) *with State v. Glens Falls,* 137 Vt. at 317, 404 A.2d 101 (duty to defend unless injury was highly probable or intentionally caused, and subjective testimony relevant only in equivocal circumstances).

opportunity to transfer to another division of the corporation if his employers were dissatisfied with him, and that he would not be fired without cause.

Taking the allegations as true, Woodstock's conduct in the manner of Clement's termination does not amount to extreme and outrageous or oppressive conduct, or abuse of a position of authority. *Crump,* 154 Vt. at 296, 576 A.2d 441. Vermont courts have found as a matter of law that conduct more oppressive than that alleged here will not support liability on an emotional distress claim. *See Farnum v. Brattleboro Retreat, Inc.,* —— Vt. ——, 671 A.2d 1249 (1995); *Murray v. St. Michael's College,* —— Vt. ——, 667 A.2d 294 (1995); *Fernot v. Crafts Inn, Inc.,* 895 F.Supp. 668 (D.Vt.1995); *Gallipo v. City of Rutland,* 163 Vt. 83, 656 A.2d 635 (1994); *Denton v. Chittenden Bank,* 163 Vt. 62, 655 A.2d 703 (1994); *Baldwin v. Upper Valley Services,* 162 Vt. 51, 644 A.2d 316 (1994); *Marcoux–Norton v. Kmart Corp.,* 907 F.Supp. 766 (D.Vt.1993); *Mancini v. General Electric Co.,* 820 F.Supp. 141 (D.Vt.1993); *Ploof v. Brooks Drug, Inc.,* No. 89–270, 1991 WL 497170 (D.Vt. Aug. 28, 1991).

In addition, Clement's assertions of his resultant emotional distress do not describe the extreme disturbance that the tort requires. Clement asserted in support of his claim for intentional infliction of emotional distress merely that he had "become emotionally upset, distressed, and aggravated." Clement Complaint, ¶ 48. Because Clement could not prevail on a claim of intentional infliction of emotional distress on the facts asserted, he failed to demonstrate any factual or legal basis upon which Scottsdale might be obligated to indemnify. Scottsdale had no duty to defend Woodstock. *Garneau,* 158 Vt. at 366–67, 610 A.2d 132.

Because Woodstock cannot demonstrate that the Clement complaint alleged an occurrence as defined in the policy, it is unnecessary to examine whether emotional distress can constitute bodily injury under the policy, or whether either of the policy exclusions apply.

## III. CONCLUSION

For the foregoing reasons, Scottsdale's Motion for Summary Judgment (paper 2) is GRANTED, and Woodstock's Motion for Summary Judgment (paper 15) is DENIED.