**GTM, INC., Plaintiff,**

v.

**TRANSCONTINENTAL INSURANCE COMPANY, Defendant.**

No. 2:96–CV–16.

United States District Court,
D. Vermont.

April 28, 1998.

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, for Plaintiff.

Shapleigh Smith, Jr., Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Defendant.

*OPINION AND ORDER*

SESSIONS, District Judge.

In this diversity action, Plaintiff GTM, Inc. ("GTM") seeks a declaratory judgment that its insurance policy with Defendant Transcontinental Insurance Company ("Transcontinental") covers the loss by fire of a barn and certain property stored inside. Plaintiff and Defendant have filed motions for partial summary judgment (Papers 19 and 24, respectively) as to Defendant's coverage obligations. In addition GTM moves to join Gary and Christina Tomlinson as plaintiffs (Paper 30). For the following reasons, Plaintiff's Motion to Amend is granted, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I. *Factual Background*

GTM is a Pennsylvania corporation with its principal place of business in St. Johnsbury, Vermont. GTM performs general contracting work involving building site development; its sole shareholders and officers are Gary and Christina Tomlinson. In 1994, the Tomlinsons decided to move their home and business to Vermont. On June 24, 1994, they bought a farm in St. Johnsbury which included a house, garage, and barn.

GTM operated out of a building it leased from the Tomlinsons in Elverson, Pennsylvania. Since at least 1992, GTM insured this building through B.C. Morrissey Insurance, Inc. ("Morrissey"), a local agency. Morrissey arranged GTM's policy with CNA Insurance Companies ("CNA"). The policy is now owned by Defendant Transcontinental, an insurance company with its principal place of business in Chicago, Illinois. As the Tomlinsons' move approached, they alerted Morrissey agents of their desire to continue GTM's policy with Transcontinental once they were in Vermont. Morrissey located an agent in Vermont, Pomerleau Agency, Inc. ("Pomerleau"), to which the responsibility for GTM's policy would be transferred.

This transfer coincided with the issuance of a new policy on September 1, 1994. Correspondence from Morrissey agents to Pom-

erleau agents acknowledged an "intent to continue [the] policies as they are currently written." (Paper 22, Ex. 7; *see also* Ex. 25.) Gary and Christina Tomlinson met with a Pomerleau agent regarding this new policy. They both recall requesting that "[w]hatever [they] had in effect in Pennsylvania" be continued. (Paper 29 at 11 .)

The new policy took effect on September 1, 1994, though the Tomlinsons did not receive the policy itself in writing until January 19, 1995. Until that time, the Tomlinsons regularly received insurance binders confirming the policy that was in place. The Tomlinsons also insured the St. Johnsbury property separately with Cooperative Fire Insurance Association of Vermont ("Coop"). This policy protected the buildings and personal property within them from fire loss.

When the Tomlinsons moved to St. Johnsbury, they brought construction equipment, supplies, and business personal property associated with GTM. The office equipment and other personal property remained in GTM's Pennsylvania office, which GTM continued to lease from the Tomlinsons. On December 2, 1994, GTM closed the Pennsylvania office and shipped the rest of its property to the St. Johnsbury property, where it was stored in a box trailer. The Tomlinsons then began to renovate and move property into the barn for GTM's use. GTM leased space in the barn starting on January 1, 1995.

A fire destroyed the barn and its contents on February 7, 1995. The Tomlinsons recovered a claim for the barn and personal contents lost pursuant to the Coop policy. They and GTM now claim that they should also recover under the Transcontinental policy for the loss of the barn, the business personal property within it, and five insured types of personal property. Both parties moved for partial summary judgment on the issue of Transcontinental's coverage obligations under the policy.

This claim was initially brought by GTM alone, as it was the only named insured on the Transcontinental policy. During discovery, it was confirmed that the Tomlinsons should also have been named insureds on the policy. Both parties agreed that this omission was erroneous, and Transcontinental issued a policy endorsement naming the Tomlinsons as insureds retroactively.

Plaintiff in recent memoranda contended that the Tomlinsons should recover as well. Transcontinental, while it did not dispute that the Tomlinsons should be considered named insureds, argued that the Tomlinsons were not parties to this lawsuit. GTM answered by filing a Motion to Amend the Complaint to add the Tomlinsons as plaintiffs on January 20, 1998, more than two years after the fire loss. Transcontinental opposes the amendment based on a policy clause which states, "No one may bring a legal action against [Transcontinental] under this Coverage Part unless ... [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Paper 22, Ex. 4.)

With respect to the coverage obligations in dispute, the governing parts of the policy are the Declarations, the Building and Personal Property Coverage Form ("Coverage Form"), and the Encompass II® Tailored Commercial Program Contractors Program Extension Endorsement ("Endorsement"). The Coverage Form details the policy's scope, and it is modified by the Endorsement.

As modified, the Coverage Form indicates that Transcontinental would pay for loss of or damage to "Covered Property at the premises described in the Declarations." (Paper 22, Ex. 2 at 1.) To be "Covered Property," an item must fit the definition of one of several varieties of property, and it must have a limit of insurance showing in the Declarations. If an item is not Covered Property, it may still be insured if there is an applicable coverage extension. Coverage extensions widen the insurer's obligations as to certain property. Unless a particular provision states otherwise, coverage extensions "apply to property located in or on the building described in the Declarations or ... within 100 feet" of that building. (Paper 22, Ex. 2 at 3.) The policy's terms vary as to the different types of property at issue in this case.

### A. *The Vermont Barn*

Among the categories of Covered Property are "Buildings," defined as those structures that are described in the Declarations. One building is so described here. The Declarations post a limit of insurance of $367,500 for a "joisted masonry" building at the St. Johnsbury address. (Paper 22, Ex. 1). The Pennsylvania building is built of joisted masonry, not the St. Johnsbury barn. Neither party disputes that the Pennsylvania building was Covered Property. Transcontinental submits that the Vermont barn was also listed on the policy as a "described premise" *without* a limit of insurance, meaning it was not Covered Property. GTM maintains that the barn was not a described premise at all.

A coverage extension governing "Newly Acquired or Constructed Property" concerns buildings in two ways. First, Covered Property insurance may be extended to apply to "new building(s) while being built on the described premises" and buildings "acquire[d] at locations, other than the described premises." Acquired buildings must be used as a warehouse or put to similar use as the building described in the Declarations. (Paper 22, Ex. 3 at 3.) Second, the insurance applicable to the "Buildings" category may be extended to include new buildings being built on the described premises and buildings acquired at any premises not described in the policy, with no use criteria. Both of these extensions end when "90 days expire after [the insured] acquire[s] or begin[s] to construct the property." (Paper 22, Ex. 3 at 3.)

### B. *Business Personal Property*

Business personal property is Covered Property if it is located in or on the building described in the Declarations, or within 1000 feet of that building. The "Newly Acquired or Constructed Property" section also provides two coverage extensions for business personal property. First, the insurance that applies to Covered Property may be extended to apply to business personal property "at any location [the insured] acquire[s]." (Paper 22, Ex. 3 at 3.) Second, insurance under the "Business Personal Property" category may be broadened to cover business personal property "at any premises [the insured] acquire[s]." (*Id.*) Again, these extensions are no longer available when "90 days expire after [the insured] acquire[s] or begin[s] to construct the property." (*Id.*)

### C. *Personal Property*

Several coverage extensions exist for particular types of personal property. Plaintiff invokes five such extensions, each of which applies to loss or damage occurring at the "described premises." (Paper 22, Ex. 3 at 3, 4, 6.) First, the insured can "extend the insurance that applies to ... Business Personal Property to apply to" personal effects and the property of others. (Paper 22, Ex. 3 at 3–4.) Second, the business personal property insurance may also be extended to cover loss of valuable papers and records, and the resulting research or replacement costs. (Paper 22, Ex. 3 at 4.) Third, the insured can "extend coverage to apply to [its] signs [not attached to building] ... outdoor trees, shrubs and plants." (*Id.*) Fourth, an extension of Covered Property insurance exists for extra expenses incurred in order to continue the insured's normal operations following loss or damage. (*Id.*) Fifth, insurance of Covered Property may be extended to cover loss or damage to works of art. (Paper 22, Ex. 3 at 6.)

A schedule of insurance accompanied the policy received by GTM on January 19, 1995. The schedule stated that "[n]ot all coverages listed are presently being provided unless a limit is indicated." (Paper 22, Ex. 16 at 1.) The document proceeded to list limits of insurance not only for the building in Pennsylvania, but for the five types of personal property described above: personal property of others, valuable papers, signs, extra expenses, and fine arts. According to GTM, this document suggests that GTM was covered for these personal property items.

## II. *Discussion*

### A. *Legal Standards for Summary Judgment and Construction of Insurance Policies*

Summary judgment shall be awarded to the moving party if the court finds that

"there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 927 F.Supp. 149, 153 (D.Vt.1996). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223 (2d Cir.1994). All ambiguities must be resolved and all inferences from the facts drawn in favor of the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Therefore, Vermont law will be applied to the substantive issues. *Woodstock*, 927 F.Supp. at 153; *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Construction of an insurance policy is a question of law and thus this Court may appropriately decide the issue of what coverage the policy provides. *Morrisville Water & Light Dept. v. U.S. F&G*, 775 F.Supp. 718, 722 (D.Vt. 1991).

In Vermont, insurance policies are to be interpreted according to their terms and the evident intent of the parties as expressed in the policy language. *Woodstock*, 927 F.Supp. at 153; *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). Disputed terms are to be construed according to their plain, ordinary, and popular meaning. *Morrisville*, 775 F.Supp. at 724 (*quoting American Protection Ins. Co. v. McMahan*, 151 Vt. 520, 522–23, 562 A.2d 462, 464 (1989)). Any ambiguities are to be resolved in favor of the insured. *Lunge v. National Cas. Co.*, 977 F.Supp. 672, 676 (D.Vt.1997).

Whether a term in an agreement is ambiguous is a question of law. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). It is "appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement." *Id.* at 579, 556 A.2d at 84. Ambiguity exists when the writing by itself "supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.*

Once ambiguity has been found, a court may turn to extrinsic evidence to construe the agreement "without running afoul of the parole evidence rule." *Lunge*, 977 F.Supp. at 678. *See Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83; *Abbiati v. Buttura & Sons, Inc.*, 161 Vt. 314, 319, 639 A.2d 988, 991 (1994) (applying *Isbrandtsen* to dispute over meaning of insurance policy).

Any ambiguity concerning solely the policy's language may be resolved by the court. An ambiguity which leaves in doubt the parties' intent, however, precludes a finding of summary judgment. *See Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 819 F.Supp. 1282, 1288 (S.D.N.Y.1993) (court must deny summary judgment if intent of contracting parties is subject to more than one reasonable interpretation).

### B. *Motion to Amend*

Transcontinental concedes that the Tomlinsons should be named insureds of the policy alongside GTM. In opposing the amendment adding the Tomlinsons as plaintiffs, Transcontinental relies on a policy clause prohibiting legal action against it once two years have passed from the date of loss. This argument seems more like the basis for a motion to dismiss than the grounds for opposing an amendment of the Complaint. Rather than postpone discussion of the notice clause until such a motion is raised, the Court will address Transcontinental's argument now.

In Vermont, an insured may be required "to promptly notify the [insurer] in the event of a claim or suit." *Cooperative Fire Ins. Assn. of Vermont v. White Caps, Inc.*, 694 A.2d 34, 37 (Vt.1997). However, an insurer seeking relief from its obligations based on breach of a notice clause must show "substantial prejudice" resulting from the breach. *Id.* at 35. Claims are not automatically forfeited if a notice clause is violated. This rule recognizes that notice clauses are designed "to protect the insurance company from being placed in a substantially less fa-

vorable position than it would have been in had timely notice been provided." *Id.* at 38 (*quoting Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 198 (1977)).

Transcontinental has not shown that it is in a less favorable position because of the notice clause violation. Notice of the actual fire loss was prompt and did not inhibit Transcontinental's ability to investigate the claim. Similarly, GTM filed this lawsuit within the two-year period, permitting Transcontinental to prepare its legal strategies in a timely fashion. Adding the Tomlinsons does not change the factual or legal circumstances of the case. Aside from the fact that they may seek the full replacement cost of the barn rather than the replacement cost of a leasehold interest, the Tomlinsons' interests are identical to those of GTM. There is no evidence that Transcontinental has been disadvantaged by the filing of this motion on January 20, 1998, instead of on a date before February 7, 1997.

Furthermore, Transcontinental agents mistakenly left the Tomlinsons off the policy, and the insurer last year revised the policy to name the Tomlinsons as insureds retroactively. Had the Tomlinsons been correctly included as named insureds, their interests would have been clear before the two-year time limit had elapsed. It is inequitable to deny an amendment adding the Tomlinsons because of a time bar, when Defendant contributed substantially to the reason for the delay. Regardless, Transcontinental has not shown substantial prejudice resulting from this delay. The Tomlinsons will be able to assert their claims as insureds.

## C. *Summary Judgment*

### 1. *The Vermont Barn*

The parties agree that the policy designated as Covered Property the Pennsylvania building, not the Vermont barn. Plaintiffs may recover for loss of the barn, then, only if they was insured under one of the two relevant portions of the "Newly Acquired or Constructed Property" coverage extension. The Tomlinsons argue that this coverage extension insures them for the replacement cost of the barn. This claim is separate from

any insurable interest GTM may have in the barn.

Both of the applicable portions of the coverage extension, relating to "Covered Property" and "Buildings," contain a section for "acquired" property and one for "built" property. (Paper 22, Ex. 3 at 3.) Transcontinental argues that the "acquired" property sections do not apply to the Vermont barn because it is a "described premise." Both "acquired" property sections specify that the property must be located somewhere other than at the described premises. The Tomlinsons argue that the barn was not a described premise in the Declarations. This issue is muddied by the fact that the Declarations describe only one building, with "joisted masonry" like the Pennsylvania building but also with a Vermont address.

Even if the Court agreed with Plaintiffs and determined that the barn was not a described premise, the "acquired" property sections would not cover the Tomlinsons. They bought this building in June 1994, more than ninety days before the fire. The coverage extensions therefore expired before the fire occurred.

Plaintiffs submit that the Tomlinsons' interest meets the time limit in that their renovations constituted construction. The renovations began and were ongoing within ninety days of the fire. The work performed, according to this theory, qualifies the barn as a newly "constructed" property for the purposes of the time limit. However, both "constructed" property sections refer to property built on the described premises. According to Plaintiffs, the Vermont premises are not described.

Even assuming that the Vermont property was a described premise, this attempt to meet the ninety-day deadline defies the plain meaning of the policy. First, Plaintiffs mischaracterize the nature of the work done on the barn. A pre-existing structure was renovated and repaired to fulfill a new use. This work did not result in a "new building[ ] being built" in the ordinary sense. Second, Plaintiffs' reliance on the provisions for "built" property requires one to ignore the counterpart provisions for "acquire[d]" prop-

erty. This would be improper, as meaning should be given to a policy by viewing it in its entirety. *See Isbrandtsen,* 150 Vt. at 580, 556 A.2d at 85. Looking at the coverage extensions as a whole, clearly the Vermont barn was meant to be covered if at all under the "acquired" property provisions.

The Tomlinsons attempt to mix and match certain sections of the policy to create a valid coverage extension for the barn. They argue that the barn was "acquired" away from the described premises, which qualifies it initially for an extension. Simultaneously they propose that the barn be characterized as a "new building[ ] being built" for the purposes of the time limit. This twisted interpretation does not reflect the plain meaning of the relevant sections of the coverage extension. While unclear policy terms should be construed in favor of the insured, "[t]he insurer should not be deprived of unambiguous provisions put into a policy for its benefit." *Lunge,* 977 F.Supp. at 676. The coverage extensions applied to the barn as "acquired" property obtained by the Tomlinsons in June 1994. By the time of the fire, however, any extension covering the Tomlinsons' interest had expired.

■ Summary judgment against the Tomlinsons is therefore warranted. This decision does not foreclose any claim by GTM that the coverage extensions insured its interest in the barn. Such a claim would present disputed factual issues, among them the extent of GTM's insurable interest based on its lease of the barn and the parties' intent, and exactly how much of the barn was leased or occupied by GTM. These factual issues preclude a summary judgment determination.

### 2. Business Personal Property

■ The business personal property in the barn was not Covered Property. To be Covered Property, such items would have had to be in, on, or near the described premises in the Declarations. Plaintiffs contend that the barn was not a described premise. Even if the Vermont premises were described, business personal property was not separately listed with a limit of insurance in the Declarations.

■ As was the case with the barn, two applicable coverage extensions for business personal property are located within the "Newly Acquired or Constructed Property" extension. Both provisions are subject to the ninety-day deadline. Furthermore, both of these provisions specifically refer to business personal property at any location "acquire[d]," as opposed to any property built. (Paper 22, Ex. 3 at 3.) Since the barn was acquired more than ninety days before the fire, these extensions would also seem to have expired.

■ However, it is not clear whether the parties intended to cover the business personal property under this policy. The Tomlinsons' depositions indicate that they did not specifically ask for coverage of business personal property on this policy. Nonetheless, their testimony and the correspondence from Morrissey and Pomerleau agents suggest an intent to continue coverage for GTM as it existed before. Prior policies ensured the coverage of the business personal property, which resided at the Pennsylvania building. As the new policy was being formed, the agents involved were aware that the Tomlinsons were moving their business to Vermont. It cannot be readily determined whether the parties intended for the policy to cover GTM's business personal property wherever it was located.

Plaintiffs did not possess new business personal property in Vermont in addition to old business personal property in Pennsylvania. The same property simply was relocated. It is plausible that although the policy was not equipped to cover business personal property which had been moved to Vermont, the parties intended for such coverage to exist. The intent of the parties as to business personal property coverage is ambiguous. Therefore, summary judgment would be premature.

### 3. Personal Property

■ Two potential obstacles threaten coverage of the five specified kinds of personal property. First, two coverage extensions broaden the policy's business personal property coverage: the provision for the personal effects and property of others, and that

for records and valuable papers. Whether these two coverage extensions apply hinges on whether business personal property is covered under the policy, which is a disputed issue of material fact. Second, all five coverage extensions refer to loss or damage at the described premises. If, as Plaintiffs argue, the barn was not a described premise in the policy, these extensions may be inapplicable.

However, the schedule issued to GTM with its policy in January 1995 suggests that these items are covered. This schedule notes that only those items with expressed limits of insurance are covered. All five types of personal property are listed with limits of insurance. Plaintiff could have received this schedule and concluded that this property was insured regardless of its location. This disparity between the policy issued and the schedule which accompanied it reveals ambiguity as to the parties' intent. It is unclear whether the insurer and the insured meant to cover these kinds of personal property at GTM's new location in Vermont. This ambiguity prevents a summary judgment determination.

III.  *Conclusion*

Based on the foregoing analysis, Plaintiff's Motion to Amend Complaint (Paper 30) is GRANTED, Plaintiff's Motion for Partial Summary Judgment (Paper 19) is DENIED, and Defendant's Motion for Partial Summary Judgment (Paper 24) is GRANTED as to coverage of Gary and Christina Tomlinson's interest in the St. Johnsbury, Vermont barn and DENIED as to all other claims.